WOLNEY v SECRETARY OF STATE

OPINION OF THE COURT

1. AUTOMOBILES—OPERATORS OF VEHICLES—IMPLIED CONSENT—CHEMI-
   CAL TESTS—INTOXICATING LIQUORS—INTOXICATED PERSONS—
   STATUTES—REFUSAL OF TEST—RIGHT TO HEARING—SUSPENSION
   OF LICENSE.

   The implied consent statute provides for chemical tests of a
   driver's blood, breath, urine or other bodily substances for the
   purpose of determining the alcoholic content of his blood; a
   driver who refuses to take a chemical test upon being arrested
   for driving under the influence of intoxicating liquors has a
   statutory right to a hearing to determine whether there are
   reasonable grounds to believe he was driving while under the
   influence of alcohol before his driver's license may be sus-
   pended (MCLA 257.625 *et seq.;* MSA 9.2325 *et seq.).*

2. CONSTITUTIONAL LAW—DUE PROCESS—ADMINISTRATIVE HEARING—
   INTOXICATING LIQUORS—REASONABLENESS OF ARREST—CHEMICAL
   TESTS—ISSUES—SECRETARY OF STATE—POLICE.

   An administrative hearing designed to resolve the statutory
   issues of intoxication, reasonableness of arrest and chemical
   tests or refusal thereof is not a criminal trial and the degree or
   extent of constitutional due process required for a fair and
   impartial hearing is not as great; the Secretary of State does
   not have an interest in the resolution of these issues which
   would bar him from appointing the hearing officer for the
   driver license revocation hearings.

3. CONSTITUTIONAL LAW—AUTOMOBILES—OPERATOR OF VEHICLES—IN-
   TOXICATING LIQUORS—IMPLIED CONSENT—HEARINGS—SECRETARY
   OF STATE.

   An amendment to the implied consent law which requires drivers
   who refuse an intoxication test to appear for a license revoca-

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 115, 116, 333.
Necessity of notice and hearing before revocation or suspension of
motor vehicle driver's license. 60 ALR3d 361.
[2, 4] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 120, 121.

tion hearing before a hearing officer appointed by the Secretary of State is not constitutionally infirm.

CONCURRENCE BY N. J. KAUFMAN, J.

4. AUTOMOBILES—OPERATORS OF VEHICLES—IMPLIED CONSENT—CHEMICAL TESTS—INTOXICATING LIQUORS—REFUSAL TO TAKE TESTS—REASONABLENESS.

   *A driver who has refused to take an intoxication test has a statutory right to have a finding made at his license revocation hearing as to whether his refusal was reasonable or unreasonable, and such finding should be based on fact or testimony and not administrative policy.*

Appeal from Wayne, Thomas Roumell, J. Submitted April 6, 1977, at Detroit. (Docket No. 31106.) Decided July 19, 1977. Leave to appeal applied for.

Petition by Robert Wolney for restoration of driving privileges suspended by the Secretary of State. Restoration granted and petitioner's driving record was ordered expunged of the conviction from which the suspension arose. The Secretary of State appeals. Reversed.

*Ingle & Burke,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *James B. Saunders* and *Alan H. Broad,* Assistants Attorney General, for defendant.

Before: BEASLEY, P. J., and J. H. GILLIS and N. J. KAUFMAN, JJ.

BEASLEY, P. J. This appeal challenges the statutory hearing procedure afforded those persons who request a hearing after refusing to take a chemical test upon being arrested for driving under the

influence of intoxicating liquor.[1] Following such a hearing, at which adverse determinations of fact were made and after the resulting suspension of the driver's license, plaintiff sought review in the circuit court. The circuit court held that the statutory procedure denied the driver due process of law[2] and, since the suspension period for the driver's license had already expired, the court ordered that the conviction be expunged from the driver's record. The Secretary of State now appeals.

On June 3, 1976, a Redford Township police officer arrested plaintiff-appellee (herein referred to as "driver") in Redford Township for driving a motor vehicle while under the influence of intoxicating liquor. The driver executed a form which documented his refusal to take a chemical test pursuant to the implied consent act of the motor vehicle code.[3] The driver then received a notice which stated that, unless a hearing was requested, his operating privileges would be suspended due to his refusal to take the referenced test. The driver requested such a hearing, and it was held on July 12, 1976.

Counsel for the driver appeared at the hearing and specifically objected on due process grounds to the fact that the hearing officer was an employee of the Secretary of State. The hearing officer noted the objection for the record, but stated that it was a constitutional matter which he did not have the power to decide and which would have to be left up to the circuit court. The hearing was then conducted and, pursuant to the statute, the hearing officer made the following findings of fact:

[1] MCLA 257.625 *et seq.;* MSA 9.2325 *et seq.,* MCLA 257.322; MSA 9.2022.

[2] US Const, Am XIV; Const 1963, art 1, § 17.

[3] MCLA 257.625 *et seq.;* MSA 9.2325 *et seq.*

"1. The officer observed the Petitioner's vehicle travelling at a high rate of speed—70 in a 35 approximately. Upon stopping the Petitioner he observed that he was unsteady on his feet and that there was a significant odor of alcohol on his breath.

2. Petitioner was arrested for DUIL.

3. Petitioner was advised of his rights.

4. Petitioner unreasonably refused to submit to the test."

The driver was then given a copy of an order setting forth the results of the hearing and his driver's license was taken. On July 15, 1976, the Secretary of State formally suspended the driver's driving privilege by issuance of an "Order of Revocation or Suspension or Denial".

Circuit court review then followed. The circuit court held that the case was controlled by *Crampton v Department of State.*[4] *Crampton* involved the predecessor to the statute now challenged.[5] Under that former statute, a hearing similar to the one in the instant case was held before a board composed of the Secretary of State, the Attorney General and the sheriff or chief of police of the county or city where the petitioner resided; the statute also provided that the specified members could nominate representatives and that two members would constitute a quorum for purposes of holding a hearing. Crampton's own hearing was before a two-member board composed of a Secretary of State employee representing the Secretary of State and a police officer representing the chief of police of the Lansing Police Department. Crampton argued that he was deprived of due process of law by being forced to submit his case to a tribunal which

---

[4] 395 Mich 347; 235 NW2d 352 (1975), *reh den* 396 Mich 956 (1976).

[5] 1953 PA 215, § 322.

included as members a policeman or the Attorney
General. The Court said:

"We conclude that it is impermissible for officials who
are entrusted with responsibility for arrest and prosecu-
tion of law violators to sit as adjudicators in a law
enforcement dispute between a citizen and a police
officer. In this situation, as in those previously identi-
fied by the United States Supreme Court, the probabil-
ity of actual bias on the part of judge or decisionmaker
is too high to be constitutionally tolerable.

*   *   *

"Resolution of those factual issues [the same four
factual issues determined by the hearing officer in the
instant case] will often turn on appraisal of the credibil-
ity of the opposing testimony of the officer and the
citizen.

"Police officers are full-time law enforcement officials
trained to ferret out crime and arrest citizens who have
violated the law.

"Similarly, the Attorney General and prosecuting
attorneys are responsible for prosecution of citizens
charged with violation of the law. Prosecuting attorneys
and their assistants have been designated to represent
the Attorney General on License Appeal Boards al-
though they or others in their office are prosecuting the
person whose appeal they are hearing for a drunk
driving offense arising out of the incident which
prompted the revocation hearing. Crampton was prose-
cuted and, subsequent to this license revocation hear-
ing, was convicted of a drunk driving offense.

"We do not suggest that police officers and prosecu-
tors are not fair-minded. But they are deeply and
personally involved in the fight against law violators.
As law enforcement officials they are identified and
aligned with the state as the adversary of the citizen
who is charged with violation of the law. Their function
and frame of reference may be expected to make them
'partisan to maintain' their own authority and that of
their fellow officers. The risk that they will be unable to
step out of their roles as full-time law enforcement
officials and into the role of unbiased decisionmaker in

a law enforcement dispute between a citizen and a police officer presents a probability of unfairness too high to be constitutionally tolerable.

"We hold that the composition of the License Appeal Board denied Crampton his due process right to a hearing before a fair and impartial tribunal. Full-time law enforcement officials may not be members of License Appeal Board panels."[6]

*Crampton* does not discuss the constitutional implications of the presence of a representative of the Secretary of State on the license appeal board, and it appears from the opinion that this question was not raised by the parties. Nevertheless, the circuit court in the instant case was of the opinion that the same considerations set forth in *Crampton* would apply to the Secretary of State or his representative. Therefore, the circuit court held that when the Legislature amended the statute by making the sole member of the hearing panel a hearing officer appointed by the Secretary of State, it continued a procedure which was defective on the same due process grounds as the predecessor statute.

However, this case is readily distinguishable from *Crampton*. As indicated, in *Crampton* no reference is made to the implications of having a Secretary of State representative on the license appeal board.

Moreover, although the Attorney General's presence on the board is addressed by the court, that discussion is framed in terms of the position held by the assistant prosecutors to whom the Attorney General's responsibilities had actually been delegated. Since the third member of the board was to be the Sheriff/Chief of Police of the county/city where the petitioner resided, the delegation of the

---

6 395 Mich 347, 356–58; 235 NW2d 352 (1975).

Attorney General's responsibility to prosecuting attorneys led the court to focus on the problems attendant to having full time law enforcement personnel sitting in judgment on the credibility of ·other law enforcement personnel such as the arresting officer. However, the Secretary of State is not such a law enforcement officer even though the Secretary of State is given certain enforcement powers.[7]

In addition, the responsibilities of the Secretary of State in *Crampton* were delegated to an employee of the Secretary of State and in the present case the statute provides for the appointment of a hearing officer; in neither case has the Secretary of State given full time law enforcement personnel the duty of evaluating the credibility of other such personnel. Therefore, the holding of *Crampton* in regard to full time law enforcement officers is not controlling in this case.

Given that *Crampton* is not controlling, should its rationale nonetheless be applied here? We

---

[7] MCLA 257.204; MSA 9.1904:

"The secretary of state, acting through his authorized agent or the director appointed under the provisions of section 203, is vested with the power and is charged with the duty of observing, administering and enforcing the provisions of this chapter [Michigan vehicle code, chapter 2, administration, registration, certificate of title and anti-theft] and chapter 3 of this act [operator's and chauffeur's license] and is charged with the duty of observing and administering other remaining provisions of this act, except as some other state agency otherwise named in this act or any other law of this state may be charged with the duty of observing, administering and enforcing certain provisions of this act. This provision shall not be construed to permit the secretary of state to establish highway patrol. (b) The secretary of state may adopt and enforce such rules and regulations as may be necessary to carry out the provisions of this act."
MCLA 257.213; MSA 9.1913:

"The secretary of state and such officers and investigators of the department as he shall designate shall have the power:

＊    ＊    ＊

"3. Of peace officers for the purpose of enforcing the provisions of chapter 5 of this Act [financial responsibility act]."

think not. Examination of the principal case upon which *Crampton* relies shows that the rule in *Crampton* should not be expanded further.

The *Crampton* Court cites *Withrow v Larkin,*[8] which appears to herald the end of the rush to expand constitutional interpretation into new areas of administrative law. In *Withrow,* the United States Supreme Court points out the necessity to distinguish between differing administrative functions, and then goes on to find *constitutional* a Wisconsin statute providing for the licensing of doctors to practice medicine, defining and prohibiting various acts of professional misconduct, including making illegal the practice of medicine under any name other than that for which a license has been issued, if the public would be misled, and empowering the examining board to suspend temporarily the license of any doctor violating the provisions of the statute. It would appear that there is far greater basis to find a violation of constitutional due process in *Withrow* than here. In *Withrow,* the same agency investigates fact, makes charges against the doctor where the facts appear to require, and then decides under the statute whether there has been a violation, including the meting out of penalties where violations have occurred. Yet, the *Withrow* holding is that the Wisconsin statute is constitutional.

Here, we are dealing with statutory delegation of a fact finding function to the Secretary of State representative. By its terms, the statute provides that by driving a car on a public street a driver gives consent to chemical tests of his blood, breath, urine or other bodily substances for the purpose of determining the alcoholic content of his blood. The long range objective is reduction of the carnage on

---

[8] *Withrow v Larkin,* 421 US 35; 95 S Ct 1456; 43 L Ed 2d 712 (1975).

the highways by preventing intoxicated persons from driving on the highways.[9] However, if a driver so requests, the referenced findings of fact must be made prior to the suspension of the driver's license.

The first of the four factual issues is whether there are reasonable grounds to believe a defendant was driving while under the influence of intoxicating liquor. The hearing officer is *not* expected to conduct a drunk driving trial. the key word is "reasonable", and a perfunctory showing is all that is required. The second issue is whether the defendant was arrested while in the allegedly intoxicated condition, and the third issue is whether the defendant was advised of his right to have chemical tests administered, his right to refuse to submit to such chemical tests, and the consequences of refusal. The fourth and last statutory issue is whether request is made of a defendant to take the chemical test and, if so, whether he reasonably refused to take the test. The administrative hearing designed to resolve these statutory issues is a far cry from a criminal trial. The degree or extent of constitutional due process required here is of substantially less magnitude than that required in a criminal trial. These issues determined by the representative selected by the Secretary of State do not involve matters in which the Secretary of State, or his representatives, have played a part. The police officers witnessing the alleged drunk driving, making the arrest, advising the defendant regarding the chemical tests, and, perhaps, the person administering the tests, are the people "involved" and "having an interest in the outcome".

Therefore, we conclude that the subject amend-

---

[9] *Collins v Secretary of State,* 384 Mich 656, 668; 187 NW2d 423 (1971).

ment to the statute is not constitutionally infirm and, accordingly, reverse the judgment of the circuit court and reinstate the findings made by the hearing officer.

J. H. GILLIS, J., concurred.

N. J. KAUFMAN, J. *(concurring)*. I concur in the result only.

While I fully agree with my brother's fine opinion, I am convinced that the finding "Petitioner unreasonably refused to submit to the test" is one not based on fact or testimony, but on an administrative policy. This is a right that appellee has by statute.