PEOPLE v JELNECK

Docket No. 78844. Submitted December 10, 1985, at Grand Rapids.—
Decided January 22, 1986. Leave to appeal applied for.

Defendant, Dale Robert Jelneck, was convicted by a Lapeer
Circuit Court jury in a bifurcated trial of operating a motor
vehicle under the influence of intoxicating liquor and OUIL,
third offense. The circuit court, Norman A. Baguley, J., sen-
tenced him to one year in jail with work release, five years
probation and a fine of $500. Defendant appealed raising sev-
eral issues. *Held:*

1. The police officers engaged in acceptable roadside question-
ing when they administered the field sobriety tests, not custo-
dial interrogation prior to arresting defendant. The failure to
give *Miranda* warnings did not therefore bar the admission into
evidence of any statements which defendant made to the offi-
cers.

2. A defendant's privilege against self-incrimination and his
right to counsel do not apply to situations where Breathalyzer
tests are administered.

3. Defendant's argument that he was entitled to *Miranda*
warnings, because, while he was initially arrested for a mis-
demeanor, OUIL, he was subsequently charged with a felony,
OUIL, third offense, was erroneously premised on the proposi-
tion that felons must be given *Miranda* warnings while misde-
meanants need not. Both groups are entitled to *Miranda* warn-
ings. Irrespective of the elevation of the misdemeanor to a
felony, defendant was not entitled to *Miranda* warnings prior
to the sobriety and Breathalyzer tests.

4. Defendant's prior plea-based conviction for OUIL which

REFERENCES

Am Jur 2d, Criminal Law §§ 713, 794, 798, 941, 948, 950.

Am Jur 2d, Trial §§ 756, 785.

What constitutes "custodial interrogation" within rule of Miranda v
Arizona requiring that suspect be informed of his federal consti-
tutional rights before custodial interrogation. 31 ALR3d 565.

Necessity of informing suspect of rights under privilege against self-
incrimination, prior to police interrogation. 10 ALR3d 1054.

Request before submitting to chemical sobriety test to communicate
with counsel as refusal to take test under implied consent law. 97
ALR3d 852.

was a basis for his OUIL, third offense conviction was valid. The district judge who accepted defendant's plea complied with the court rule on plea hearing procedures in district court.

5. The circuit court did not err by refusing to reread the mandatory composite jury instruction in the second phase of defendant's bifurcated trial. The circuit court reminded the jury that the instruction, first given three hours earlier, applied in the second phase of the trial. The court specifically reiterated the applicability of the presumption of innocence, burden of proof, right to remain silent, and duty to weigh the evidence.

6. Other issues raised by defendant did not merit discussion or reveral.

Affirmed.

1. CRIMINAL LAW — *MIRANDA* WARNINGS — CUSTODIAL INTERROGATION.

Since roadside questioning by police officers for the purpose of determining whether a motorist is intoxicated does not constitute custodial interrogation, *Miranda* warnings need not be given to the motorist.

2. CRIMINAL LAW — BREATHALYZER TEST — CONSTITUTIONAL LAW — SELF-INCRIMINATION.

Administering a Breathalyzer test to a motorist arrested and charged with operating a motor vehicle while under the influence of intoxicating liquor does not violate the motorist's privilege against self-incrimination since the results of the test are derived from chemical analysis, not from defendant's testimonial capacities.

3. CRIMINAL LAW — BREATHALYZER TEST — CONSTITUTIONAL LAW — RIGHT TO COUNSEL.

The Sixth Amendment right to counsel does not attach to a motorist who is administered a Breathalyzer test following his arrest for operating a motor vehicle while under the influence of intoxicating liquor, since the test is scientific and the delay in obtaining counsel would interfere with the accurate appraisal of the alcohol content.

4. CRIMINAL LAW — GUILTY PLEAS — ENHANCED CONVICTIONS.

Where a defendant's prior guilty plea to a misdemeanor complies with the applicable court rule on plea hearing procedures and is otherwise valid, it may be used as the basis for enhancing subsequent convictions for either misdemeanors or felonies (DCR 785.4[e], now MCR 6.201[D][5]).

5. TRIAL — JURY INSTRUCTIONS — BIFURCATED TRIALS.

    In a jury trial which is bifurcated for the purpose of determining a defendant's guilt of the instant offense and determining his status as a habitual offender, it is not necessary in all such cases for instructions which were read during the first phase to be repeated during the second phase; where a significant period of time has passed since the first set of instructions was read, it may be necessary to repeat the instructions; trial courts are urged by the Court of Appeals to repeat, or draw particular attention to, the more fundamental instructions, such as the presumption of innocence and burden of proof in such bifurcated trials.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Nick O. Hojowka,* Prosecuting Attorney, and *Justus C. Scott,* Chief Assistant Prosecuting Attorney, for the people.

*Noel L. Lippman,* for defendant.

Before: ALLEN, P.J., and R. B. BURNS and N. J. KAUFMAN,* JJ.

PER CURIAM. Defendant was convicted by a jury of operating a vehicle while under the influence of liquor (OUIL) and OUIL, third offense, MCL 257.625(1) and (6); MSA 9.2325(1) and (6). Defendant was sentenced to one year in jail with work release, five years probation and a $500 fine.

Officers Kenneth Schroeder and Arthur De-Vriendt of the Lapeer County Sheriff's Department stopped defendant after observing him drive in the wrong traffic lane on Davison Road in the City of Lapeer. DeVriendt testified that he noticed a strong odor of liquor on defendant and that defendant fumbled to produce his license. De-Vriendt asked defendant to get out of the car. Defendant attempted to reach for the door handle

---

    * Retired Court of Appeals judge, sitting on the Court of Appeals by assignment.

four times before the officer opened the door and helped defendant exit from the car. The officer also testified that defendant staggered as he walked toward the rear of the car. DeVriendt inquired as to how much education defendant had completed and defendant replied that he reached the sixth grade. The officer asked him if he knew his alphabet or if he could count up to ten and defendant replied, "no". When defendant tried to place his feet together and raise one foot, he almost fell to the pavement. At that point, the officers arrested defendant for OUIL and placed him in the rear seat of the patrol car.

Officer Schroeder testified that once defendant was in the car, the officer read him the advice of chemical rights from a form at 5:30 a.m. Defendant agreed to take the Breathalyzer test and was taken to the Lapeer County Sheriff's Department where Officer James McClain administered the first Breathalyzer test at 5:53 a.m. and the second one at 6:03 a.m. The results of both tests showed a blood alcohol level of .18%. The parties agree that the officers never read Miranda[1] warnings to defendant. The prosecutor charged defendant with OUIL, third offense, or, in the alternative, driving with a blood alcohol content over .10%, third offense. The complaint alleged that the prior convictions occurred on August 9, 1982, and May 10, 1983.

Defendant appeals and raises seven issues. We affirm.

I

Defendant argues that statements made by him and the Breathalyzer results were inadmissible

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

because the police did not advise him of his *Miranda* rights. Defendant, however, does not specify which statements were illegally elicited. Apparently, defendant is referring to his statements regarding his sixth-grade education and admission that he could not recite the alphabet or count up to ten. Roadside questioning by police officers for the purpose of determining whether a motorist is intoxicated does not constitute custodial interrogation and, therefore, *Miranda* rights do not attach. *Berkemer v McCarty,* 468 US —; 104 S Ct 3138; 82 L Ed 2d 317 (1984); *People v Chinn,* 141 Mich App 92; 366 NW2d 83 (1985). The police in the instant case administered the usual field sobriety tests to determine if defendant was extremely tired or intoxicated. Officer DeVriendt inquired into defendant's level of education to decide if he had the intelligence to recite the alphabet. Since defendant did not graduate from high school, the officer did not have him recite the alphabet. The police officers engaged in acceptable roadside questioning, not custodial interrogation. Hence, defendant's statements were admissible.

Michigan courts have long recognized that the administering of a Breathalyzer test does not violate the privilege against self-incrimination. *People v Gebarowski,* 47 Mich App 379; 209 NW2d 543 (1973). This recognition is based on the rationale that the results of the test are derived from chemical analysis, not from the defendant's testimonial capacities. *Gebarowski, supra,* pp 383-384. Moreover, a motorist implicity consents to give a breath sample pursuant to the OUIL statute. *Wolney v Secretary of State,* 77 Mich App 61; 257 NW2d 754 (1977). In short, the police in the instant case did not seek to compel defendant to give testimonial evidence and, therefore, respected the privilege against self-incrimination. Nor does the

Sixth Amendment right to counsel attach prior to the taking of the Breathalyzer test since the test is scientific and the delay is obtaining counsel would interfere with the accurate appraisal of the alcohol content. *Holmberg v 54-A Judicial District Judge,* 60 Mich App 757; 231 NW2d 543 (1975).

Defendant also argues that he was entitled to *Miranda* warnings at the time of his arrest on misdemeanor charges because he was later charged with a felony. The premise of this contention is that felons have *Miranda* rights while misdemeanants do not. No rule of law supports this distinction, as both groups are entitled to *Miranda* warnings. Irrespective of the elevation of the misdemeanor to a felony, defendant was not entitled to *Miranda* warnings prior to the sobriety and Breathalyzer tests.

## II

Defendant next argues that he cannot be convicted as a third-time offender based on a prior guilty plea as the plea, according to defendant, was improperly taken. Defendant challenges the validity of his 1982 plea-based conviction for OUIL, alleging that the district court judge at that plea hearing did not advise him of his right to confrontation, right to counsel, and his privilege against self-incrimination. DCR 785.4(e), now MCR 6.201(D)(5), sets forth the requirements connected with accepting a guilty plea in district court:

"Prior to accepting a plea of guilty or nolo contendere, the court shall

"(1) advise the defendant that if his plea is accepted, he will not have a trial of any kind, so he gives up the rights he would have at a trial;

"(2) determine that the plea is voluntary; and

"(3) establish support for a finding that defendant is

guilty of the offense charged or the offense to which the defendant is pleading.

"The court may not accept the plea unless it is convinced that the plea is understanding, voluntary, and accurate."

Our review of this case indicates that the district judge fully complied with this rule at the 1982 plea hearing.

Although the plea hearing procedures may not have complied with the more stringent requirements of GCR 1963, 785.7, now MCR 6.101(F), defendant's 1982 plea was not subject to that rule. GCR 1963, 785.10, now MCR 6.101(I).

The Supreme Court obviously intended that different rules be applied in district court and in circuit court for offenses punishable by less than six months in jail than for felony pleas in circuit court. That this distinction was intended is reflected by the fact that the Supreme Court repromulgated these rules in the 1985 Michigan Court Rules without substantive change. It would be incongruous for us to conclude that a guilty plea which complied with the applicable court rules cannot be used to enhance the sentence for a subsequent conviction. We hold that where a guilty plea complies with the applicable rules for accepting that plea, and is otherwise valid, it may be used as the basis for enhancing subsequent convictions.

III

Defendant asserts that the trial court erred in refusing to reread the mandatory composite jury instructions in the second phase of his bifurcated

trial.[2] At the second phase of the trial, the trial court refused to reread those instructions which had been read during the first phase.

No case law directly addresses this issue. However, we conclude that it is not necessary in all cases for instructions which were read during the first phase of a bifurcated trial to be repeated during the second phase. Rather, we will look to the instructions given during both phases to determine if the jury was properly instructed. We do caution, however, that where a significant period of time has passed since the first set of instructions was read, it may be necessary to repeat the instructions. We also urge the trial courts to repeat, or draw particular attention to, the more fundamental instructions, such as the presumption of innocence and burden of proof.

In the instant case, the judge had read the composite instructions three hours before reading the instructions in the second phase of the trial. The judge reminded the jury that the first instructions applied in the second phase of trial. He specifically mentioned the applicability of the presumption of innocence, burden of proof, right to remain silent, and duty to weigh the evidence. Under these circumstances, the trial judge properly instructed the jury in the second phase of trial.

We have considered defendant's remaining four issues and conclude that they merit neither reversal nor discussion.

Affirmed.

---

[2] The first phase of the trial determined defendant's guilt on the instant offense, the second phase determined his status as a habitual offender.