CITY OF ANN ARBOR V McCLEARY

Docket No. 196565. Submitted October 8, 1997, at Detroit. Decided March 17, 1998, at 9:25 A.M.

Mark E. McCleary was convicted by a jury in the 15th District Court of violating Ann Arbor City Code § 10:87(1) by operating a vehicle while under the influence of intoxicating liquor (OUIL). The defendant appealed to the Washtenaw Circuit Court, contending that the district court erred in denying his motion to suppress the results of a Breathalyzer test on the ground that the police did not afford him a proper opportunity to elect whether to take the test. He alleged he was not allowed to speak privately with his attorney after his arrest but only was allowed to speak with his attorney within earshot of police officers by telephone within the police station. He chose to take the test after the telephone conversation with his attorney. The court, Kurtis T. Wilder, J., upheld the district court's ruling. The defendant appealed by leave granted.

The Court of Appeals *held*:

1. There is no right to counsel under either the federal or Michigan Constitutions before taking a Breathalyzer test. Neither constitution entitles a defendant to successfully protest a refusal by the police to permit an OUIL suspect and the suspect's attorney to privately confer over that decision.

2. MCL 767.5a(2); MSA 28.945(1)(2) guarantees that communications between attorneys and clients are privileged and confidential when the communications are necessary to enable the attorney to serve the client. Therefore, whether held in public or in private, the defendant's conversation with his attorney cannot be used against him. The statute does not grant such communicators an absolute right to demand privacy whenever and wherever they choose to communicate.

3. If, as in this case, the police have a reasonable policy that disallows private meetings between arrested OUIL suspects and visitors before the police administer blood alcohol tests, different or private accommodations are not required when the visitor is the suspect's attorney. MCL 767.5a(2); MSA 28.945(1)(2) does not override these reasonable police policies and create a right to exercise the attorney-client relationship where no right to counsel exists.

4. Even assuming that the police erred in not granting the defendant and his attorney privacy while they discussed whether the defendant should submit to the Breathalyzer test, the error was harmless in this case.

Affirmed.

1. INTOXICATING LIQUORS — AUTOMOBILES — BREATHALYZER TESTS — ATTORNEY AND CLIENT.

There is no right to counsel in deciding whether to submit to a Breathalyzer test; there is no violation of the right to counsel where the police follow a reasonable policy that disallows private meetings between a drunk-driving suspect and a visitor before the police administer a Breathalyzer test, even if the visitor is the suspect's attorney.

2. ATTORNEY AND CLIENT — ATTORNEY-CLIENT PRIVILEGE — PRIVATE COMMUNICATIONS.

The statute that guarantees that communications protected by the attorney-client privilege cannot be used against the client does not grant the attorney and client the absolute right to demand privacy whenever and wherever they choose to communicate or create a right to exercise the attorney-client relationship in private where no right to counsel exists, such as when a drunk-driving suspect is deciding whether to submit to a Breathalyzer test (MCL 767.5a[2]; MSA 28.945[1][2]).

*Susan L. Cameron*, Assistant City Attorney, for the plaintiff.

*Dykema Gossett PLLC* (by *Jonathan D. Rowe* and *Steven A. Susswein*), for the defendant.

Amici Curiae:

*Lawrence J. Bunting*, for the Michigan Municipal League.

*Martha G. Mettee*, Bay County Assistant Prosecuting Attorney, for the Prosecuting Attorneys Association of Michigan.

Before: FITZGERALD, P.J., and MARKEY and J. B. SULLIVAN* , JJ.

MARKEY, J. Defendant appeals by leave of this Court from his conviction under Ann Arbor City Code § 10:87(1) of operating a vehicle under the influence of intoxicating liquor (OUIL).[1] We affirm.

Early in the morning of May 27, 1994, an Ann Arbor police officer observed defendant drive through a flashing red light without attempting to stop or even slow his car, leading the officer to initiate a traffic stop. The officer testified that defendant exhibited various signs of drunkenness, including smelling strongly of alcohol. The officer administered several field sobriety tests, which defendant failed; consequently, the officer took defendant into custody for further proceedings. This appeal arises from what happened after defendant's arrest.

Defendant initially declined to submit to a Breathalyzer test, because he first wished to consult with his attorney. The police allowed defendant a brief telephone call to his lawyer but kept him under observation at the station pursuant to policy. Shortly after that call, defendant's lawyer came to the police station and asked to speak privately with defendant. The police declined the request, but, again consistent with policy, allowed defendant and his lawyer to speak by telephone from different parts of the facility.

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

[1] Defendant was charged and, as seen on the jury verdict form, convicted of both OUIL and unlawful blood alcohol level (UBAL), Ann Arbor City Code § 10:87(2). The judgment of sentence reflects only the OUIL conviction, however. We believe that this oversight was a clerical error of little or no import.

Defendant's lawyer testified that during this conversation he spoke within "earshot" of a police officer in a hectic and congested environment and that under these circumstances he "did not have the opportunity to give [defendant] any instruction or advice" concerning whether to take the Breathalyzer test. He did not, however, elaborate regarding how he was precluded from providing effective assistance to his client. Nonetheless, after this second telephone conversation with his attorney, defendant chose to take the Breathalyzer test.

MCL 257.625c(1); MSA 9.2325(3)(1) provides that drivers on Michigan roads are presumed to consent to alcohol testing when suspected of drunk driving. Persons who do not voluntarily take such tests remain subject to court-ordered testing and to automatic license suspension in addition to other penalties imposed on a person found guilty of driving under the influence of alcohol.

Before trial, defendant moved to suppress the results of the Breathalyzer test on the ground that the police had not afforded him a proper opportunity to elect whether to take the test. The district court denied the motion. The court admitted into evidence the results from the Breathalyzer test showing that defendant's blood alcohol level was twice the legal limit when he was arrested. The jury convicted defendant of operating a vehicle under the influence of intoxicating liquor "and/or operating a motor vehicle with an unlawful blood alcohol level." Defendant appealed to the circuit court on the ground that the Breathalyzer results were improperly admitted at trial. The circuit court upheld the district court's ruling in the matter.

Defendant now presents to this Court the question whether, if the police allow an OUIL suspect in custody to confer with his attorney before deciding whether to submit to a Breathalyzer test, the police must endeavor to provide the suspect and attorney an opportunity for a *private* conference. Defendant further asks this Court to dismiss the charges against him if we find constitutional error or, alternatively, to declare that Breathalyzer test results must be suppressed at trial when obtained under the circumstances of the instant case.

Defendant frames his argument exclusively as one implicating the right to counsel provision of the Michigan Constitution, art 1, § 20, arguing that the Michigan Constitution provides a broader right to counsel than does the Sixth Amendment of the United States Constitution. Defendant declines to invoke the due process provisions of either the Michigan or federal constitutions.

This Court has stated repeatedly that there is no right to counsel in deciding whether to submit to a Breathalyzer test. *Underwood v Secretary of State*, 181 Mich App 168, 172; 448 NW2d 779 (1989) ("the police could require petitioner to make his decision to take the test in the absence of counsel"); *People v Burhans*, 166 Mich App 758, 764; 421 NW2d 285 (1988) ("[t]his Court has held that there is no right to counsel prior to the taking of the Breathalyzer test due to the minimal risk that defense counsel's absence will harm a defendant's right to a fair trial"); *People v Jelneck*, 148 Mich App 456, 460-461; 384 NW2d 801 (1986) ("[n]or does the Sixth Amendment right to counsel attach prior to the taking of the Breathalyzer test"); *Holmberg v 54-A Judicial Dist*

*Judge*, 60 Mich App 757, 760; 231 NW2d 543 (1975) ("denial of the right to consult with counsel before an accused decides whether to take the Breathalyzer test does not violate the Sixth Amendment"). See also *McVeigh v Smith*, 872 F2d 725, 728 (CA 6, 1989) (declaring that there is no Sixth Amendment right to counsel, or Fifth or Fourteenth Amendment due process right to counsel, when deciding whether to submit to a blood alcohol test).[2]

This Court has also stated generally that "art 1, § 20 of the Michigan Constitution affords no greater rights than those guaranteed by the federal constitution." *People v Justice*, 216 Mich App 633, 636, n 2; 550 NW2d 562 (1996). In another 1996 case, this Court held that " ' "[u]nless there is a compelling reason to afford greater protection under the Michigan Constitution, the Michigan and federal [right to counsel] provisions will be treated as affording the same protections." ' " *People v Richert (After Remand)*, 216

---

[2] Defendant cites *Arizona v Holland*, 147 Ariz 453, 456; 711 P2d 592 (1985), in support of his assertion that if a person suspected of driving while under the influence is permitted to consult with his attorney, he has a right to do so in private even though he is not *entitled* to the consultation in deciding whether to take a Breathalyzer test. He also cites other cases from foreign jurisdictions where similar results are reached, based in part on state statutes explicitly ensuring the *privacy* of detainee/attorney conversations. See *Dobbins v Ohio Bureau of Motor Vehicles*, 75 Ohio St 3d 533, 535; 664 NE2d 908 (1996). We find these cases unpersuasive and nonbinding on this Court. Notably, defense counsel did not testify, as in *Holland*, regarding how he was precluded from offering assistance to defendant merely because the two had to speak to each other over the telephone. Moreover, Michigan does not have a statute ensuring private communications with an attorney after arrest or detention as in *Dobbins*, *supra*. Finally, defendant's decision to take or not take the Breathalyzer test was irrelevant in light of the warrant that the police possessed enabling them to have defendant's blood drawn. Thus, any claimed effect on the right to effective assistance of counsel is without merit because the police would have obtained defendant's blood alcohol reading by one of two methods, i.e., any claimed error was harmless.

Mich App 186, 193; 548 NW2d 924 (1996), quoting *People v Hellis*, 211 Mich App 634, 648; 536 NW2d 587 (1995), quoting *People v Perlos*, 436 Mich 305, 313, n 7; 462 NW2d 310 (1990).

The Supreme Court found such a "compelling reason" in one particular case, having declared that the Michigan Constitution "imposes a stricter requirement for a valid waiver of the rights to remain silent and to counsel than imposed by the federal constitution." *People v Bender*, 452 Mich 594, 611; 551 NW2d 71 (1996), citing *People v Wright*, 441 Mich 140, 147, 155, 170; 490 NW2d 351 (1992). In contrast to the federal constitution as interpreted by the federal courts, our Supreme Court held that under the Michigan Constitution, "in order for a defendant to fully comprehend the nature of the right being abandoned and the consequences of his decision to abandon it, he must first be informed that counsel, who could explain the consequences of a waiver decision, has been retained to represent him." *Bender, supra* at 612-613. While *Bender* buttresses defendant's argument that the Michigan Constitution provides a broader right to counsel than does the federal constitution, the exception articulated in *Bender* involves identifying a knowing and intelligent waiver of the right to counsel during custodial interrogation, a question not at issue in the instant case.

Defendant cites *Hall v Secretary of State*, 60 Mich App 431; 231 NW2d 396 (1975), as establishing a "qualified right to counsel" for drunk-driving suspects. In *Hall*, the plaintiff challenged his license revocation in a civil proceeding after he refused to take a Breathalyzer test because the police would not permit him to contact either his attorney or his wife for

seven hours after his arrest. Contrary to defendant's assertions, it is the opportunity to make a telephone call, not the opportunity for privacy, that *Hall* protects. Nevertheless, defendant attempts to extend *Hall* to require that if police allow an OUIL suspect access to counsel before administering a Breathalyzer test, they must also provide accommodations for privacy beyond those ordinarily provided for detained OUIL suspects and their visitors. Any such extension of *Hall* is unwarranted and unsupportable.

The great weight of authority establishes that there is no right to counsel under US Const, Am VI, or Const 1963, art 1, § 20. Thus, for a defendant deciding whether to take a Breathalyzer test, neither of these provisions entitles a defendant to successfully protest police refusal to permit an OUIL suspect and his attorney to privately confer over that decision. The Michigan Supreme Court's broadening of Michigan's right to counsel beyond the provisions of the United States Constitution, *Bender*, *supra*, involves *waiver* of that right, not attorney-client communications that take place before the right has attached.

Defendant also cites MCL 767.5a(2); MSA 28.945(1)(2), which provides in pertinent part that "[a]ny communications between attorneys and their clients . . . are hereby declared to be privileged and confidential when those communications were necessary to enable the attorneys . . . to serve as such attorney . . . ." This provision of the Code of Criminal Procedure does *not* entitle defendant to a private conversation with his attorney, however. Rather, assuming that defendant's telephone conversation with his attorney cannot be held in private, MCL 767.5a(2); MSA 28.945(1)(2) guarantees that the content of their

conversation is protected by the attorney-client privilege. Thus, whether held in a private or public place, defendant's conversation with his attorney cannot be used against him because it is confidential under the attorney/client privilege. Further, MCL 767.5a; MSA 28.945(1) protects selected types of communications from compelled disclosure in subsequent criminal proceedings. Indeed, the Legislature, in providing these protections to ensure the sanctity of a client's communications with his attorney, obviously did not intend to also grant such communicators an absolute right to demand privacy whenever and wherever they choose to communicate.

Accordingly, if the police have a reasonable policy that disallows private meetings between arrested OUIL suspects and visitors before the police administer blood alcohol tests, neither *Hall* nor any other case cited to us requires different or private accommodations when the visitor happens to be an attorney hoping to advise the suspect. Likewise, MCL 767.5a(2); MSA 28.945(1)(2) does not override these reasonable police policies and create a right to exercise the attorney-client relationship where no right to counsel exists.

Notably, defendant does not argue that the Ann Arbor police withheld from defendant and his attorney accommodations that police normally allowed suspects and their visitors. Defendant instead insists that if an OUIL suspect's visitor happens to be a lawyer, then police are obliged to afford additional accommodations out of respect for the attorney-client privilege. We find no support for this assertion and refuse to impose such an obligation.

Moreover, even assuming that the police erred in not granting defendant and his attorney privacy while they discussed whether defendant would submit to the Breathalyzer, we find that this preserved, nonconstitutional error was harmless. *People v Mateo*, 453 Mich 203, 206-207, 214-215, 221; 551 NW2d 891 (1996), requires us to examine the record as a whole and determine the actual prejudicial effect of the error on the factfinder, considering the likely effect of the error in light of the other evidence. "Simply stated, and employed in both federal rule and case law and state statute and court rule, reversal is only required if the error was prejudicial. That inquiry focuses on the nature of the error and assesses its effect in light of the weight and strength of the untainted evidence." *Id.* at 215.

By the time defendant spoke to his attorney, a police officer had obtained a warrant to transport defendant to the University of Michigan Hospital to have his blood drawn and blood alcohol level tested. Thus, the police would have obtained the same incriminating information from defendant no matter how his counsel had advised him.

Because we find that defendant failed to establish a legal error in the circumstances leading to his taking of the Breathalyzer test, we need not reach the question regarding the proper remedy should evidence from such a test improperly be admitted at trial.

Affirmed.