*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES FORREST CHAPMAN,

Defendant-Appellant.

UNPUBLISHED
November 26, 2019

No. 345090
Wayne Circuit Court
LC No. 17-009606-01-FH

Before: JANSEN, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his conviction and sentence for resisting or obstructing a police officer, MCL 750.81d(1). The trial court sentenced defendant to 6 months in jail and assessed court costs. We affirm defendant's conviction and sentence, but vacate the assessment of a 20% fee for late payment of court costs against him and remand to the trial court for correction of the judgment of sentence.

## I. FACTUAL BACKGROUND

On June 3, 2016, defendant argued with an acquaintance named Bennie Smith at a house located in Van Buren Township. Smith pulled out a pocketknife and attempted to stab defendant, cutting his finger. Defendant left on a bicycle. Thereafter, defendant called 911 and reported the alleged assault. Defendant told the dispatchers that there was a warrant out for his arrest, but one of the dispatchers assured him that no warrant existed. The dispatcher told defendant that he should speak with the police when they arrived, but defendant stated "I'm smarter than that[.] I'm on my way to Ypsilanti." Smith had also called 911, telling dispatchers that defendant had assaulted him.

At approximately 9:30 p.m., Van Buren Township Police Officer David Champagne was dispatched to the neighborhood where the altercation occurred. Officer Champagne spoke with Smith about the incident, and Smith informed the officer that he had seen defendant on a street in the neighborhood shortly before the officer arrived.

Officer Champagne left Smith to look for defendant and saw him standing near a forested part of the neighborhood. Defendant was pushing his bicycle and saw Officer Champagne walking toward him. Defendant dropped his bicycle and ran away from Officer Champagne toward nearby Belleville Lake. Officer Champagne called out to defendant and told him to stop, but defendant continued running.

Officer Champagne chased after defendant, verbally commanded him to stop, and threatened to taser him. Defendant ran down a flight of stairs leading to the lake, tripped, and tumbled down the remaining stairs. Defendant got up and turned to look at Officer Champagne, who once again directed him to stop. Defendant then turned around, put his hands above his head in a diving motion, and dove into the lake. Officer Champagne reached the shore and yelled at defendant to get out of the water. Defendant swam approximately 20 yards away from the shore and, then, swam east across the lake. Officer Champagne followed defendant along the shoreline. Officer Champagne saw defendant swimming toward a dock and stepped onto it. After defendant saw Officer Champagne, he again swam away. Eventually, defendant grew tired, swam back to shore, got out of the lake, and briefly collapsed.

At that point, Officer Champagne directed defendant to come up the stairs, which he did. Officer Champagne asked defendant why he had run away. Officer Champagne testified that defendant told him, "They lied to me. I knew I had warrants." After defendant finished explaining his version of the alleged assault involving Smith, Officer Champagne arrested defendant based on the outstanding warrant.

Officer Champagne took defendant to the police station and completed the arrest process in the booking room. Officer Champagne informed defendant that he was being charged with a felony for resisting and obstructing a police officer. Defendant asked to make a telephone call and called an attorney. Officer Champagne remained in the booking room while defendant spoke to his attorney and overheard their conversation. Additionally, signs posted on the booking room's doors and walls informed those inside that their conversations and phone calls were recorded. The recording of defendant's phone call was played for the jury. Defendant told his attorney that he had been charged with resisting and obstructing a police officer. Defendant also said: "I tried to swim away from them." His attorney responded: "Swim away from them?" To which defendant explained: "Yeah, like, took a splash in the river."

At trial, the 58-year-old defendant had a different version of the events leading to his arrest. Defendant, who was on probation, testified that he intended to speak with Officer Champagne about the incident with Smith. Defendant did not willingly jump into the lake to avoid being arrested; instead, he simply lost his balance and fell into the lake. Once in the lake, defendant lost his glasses and, although he noticed a flashlight shining, he was unaware that an officer was giving him directions. As to defendant's alleged statements to Officer Champagne after he got out of the lake, defendant stated he was unsure whether there was an outstanding warrant for his arrest. And defendant further claimed that his recorded statement to his attorney had been "doctored" because he had actually told his attorney that "they're saying I tried to swim away from them." Defendant noted that the time stamps on the recordings were different. Defendant explained that he did not want to state exactly what had happened "in front of a cop" as this would allow the police to "change their story and shoot [him] down that way." Defendant

-2-

further claimed that he never saw the signs advising those inside the booking room that their telephone conversations are recorded.

After the close of testimony, the jury found defendant guilty. This appeal followed.

## II. ATTORNEY-CLIENT PRIVILEGE

Defendant argues that the trial court abused its discretion by allowing the prosecution to admit the telephone recording of the conversation between defendant and his attorney after defendant was arrested because it was protected under attorney-client privilege. Defendant also asserts that this error must be imputed to the prosecution. We disagree.

### A. ISSUE PRESERVATION

The trial transcripts do not reflect that defense counsel objected to the admission of this recording on the basis of attorney-client privilege. On appeal, however, the parties filed a stipulation agreeing that defense counsel objected during an off-the-record bench conference, that the trial court overruled the objection, and that the parties unintentionally failed to place the objection and the trial court's ruling on the record. Because the parties properly expanded the appellate record, we treat this issue as preserved.[1] MCR 7.210(A)(4)[2] ("The parties in any appeal to the Court of Appeals may stipulate in writing regarding any matters relevant to the lower court or tribunal or agency record if the stipulation is made a part of the record on appeal and sent to the Court of Appeals."); see also *Nye v Gable Nelson & Murphy*, 169 Mich App 411, 414; 425 NW2d 797 (1988) (indicating that the parties' signed agreement regarding the record is to be "filed in the trial court in lieu of the transcript of testimony").

### B. STANDARD OF REVIEW

This Court reviews decisions regarding whether to admit evidence for an abuse of discretion. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). An abuse of discretion occurs when the trial court chooses an outcome that falls outside the range of reasonable and principled outcomes. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). "A preserved error in the admission of evidence does not warrant reversal unless, 'after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative.' " *People v Burns*, 494 Mich 104, 110; 832 NW2d 738

---

[1] Accordingly, we decline to address defendant's alternative ineffective assistance of counsel claim based on defense counsel's failure to object on the record.

[2] Under this rule, the parties should have filed the stipulation with the trial court clerk so that it would become part of the record transmitted to this Court under MCR 7.210(G). However, we conclude that this procedural misstep is not fatal, especially in light of the other rules permitting parties to stipulate. See MCR 7.210(B)(1)(e) (authorizing the parties to "agree on a statement of facts without procuring the transcript") and MCR 7.310(C) (permitting stipulations filed directly with the Supreme Court "regarding any matter relevant to a part of the record on appeal").

(2013), quoting *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (quotation and citation omitted).

## C. ANALYSIS

The Criminal Code of Procedure codifies the attorney-client privilege, providing:

> Any communications between attorneys and their clients . . . are hereby declared to be privileged and confidential when those communications were necessary to enable the attorneys . . . to serve as . . . [an] attorney[.] [MCL 767.5a(2).]

In general, "[c]ommunications from a client to an attorney are privileged when they are made to counsel who is acting as a legal adviser and made for the purpose of obtaining legal advice." *People v Compeau*, 244 Mich App 595, 597; 625 NW2d 120 (2001). This Court has previously explained that this statute does not entitle a defendant to a private conversation with his attorney. *City of Ann Arbor v McCleary*, 228 Mich App 674, 681; 579 NW2d 460 (1998). Instead, "assuming that [the] defendant's telephone conversation with his attorney cannot be held in private, MCL § 767.5a(2) . . . guarantees that the content of their conversation is protected by the attorney-client privilege." *Id*. at 681-682 (citation omitted). The *McCleary* panel reasoned that "the Legislature, in providing these protections to ensure the sanctity of a client's communications with his attorney, obviously did not intend to also grant such communicators an absolute right to demand privacy whenever and wherever they choose to communicate." *Id*. at 682.

This Court has also held that a defendant's incriminating statement to his attorney during a preliminary examination, which was overheard by a deputy six feet away, was not a confidential communication protected by the privilege. *Compeau*, 244 Mich App at 597. This Court explained that the "defendant chose to communicate with counsel by speaking to the attorney in a manner that could be overheard by a third person rather than covering his mouth and quietly whispering or by communicating in writing." *Id*. Because the "defendant failed to take reasonable precautions to keep his remark confidential," his "communication was not privileged." *Id*. 597-598.

Here, there is no dispute that defendant called his attorney from the booking room after he was arrested to seek legal advice. Defendant, however, took no precautions to ensure that his communication was confidential. Despite knowing of Officer Champagne's presence, defendant spoke in a manner that allowed his conversation to be overheard. *Id*. at 597. There is no evidence that defendant asked the officer for privacy or that defendant acted in a manner designed to ensure privacy. *Id*. Thus, as in *Compeau*, the contents of the recording were not privileged and the trial court did not abuse its discretion.[3]

---

[3] Because we conclude the trial court did not abuse its discretion, we also reject defendant's request to impute the court's "error" to the prosecution.

## III. LATE FEE

Defendant argues that the trial court erred by imposing a 20% late fee against him for failure to timely pay court costs because it lacked statutory authority to do so. The prosecution concedes error. We agree.

Typically, "strictly legal challenges to the imposition of fees and costs" must be raised when the trial court imposes the fee, and failure to do so results in the issue being unpreserved. *People v Jackson*, 483 Mich 271, 292 n 18; 769 NW2d 630 (2009). Because defendant failed to raise this issue in the trial court, we review for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. After these three criteria have been met, we will only reverse when the plain error "resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and alterations omitted).

The assessment of late fees for the failure to pay court costs is governed by MCL 600.4803(1), which provides:

> A person who fails to pay a penalty, fee, or costs in full within 56 days after that amount is due and owing is subject to a late penalty equal to 20% of the amount owed. The court shall inform a person subject to a penalty, fee, or costs that the late penalty will be applied to any amount that continues to be unpaid 56 days after the amount is due and owing. Penalties, fees, and costs are due and owing at the time they are ordered unless the court directs otherwise. The court shall order a specific date on which the penalties, fees, and costs are due and owing. If the court authorizes delayed or installment payments of a penalty, fee, or costs, the court shall inform the person of the date on which, or time schedule under which, the penalty, fee, or costs, or portion of the penalty, fee, or costs, will be due and owing. A late penalty may be waived by the court upon the request of the person subject to the late penalty.

The parties agree and that defendant was assessed a 20% late fee. The record reflects that the trial court assessed a late fee against defendant on May 18, 2018, which was 61 days after March 22, the date defendant was sentenced.

Defendant is correct that the trial court did not include a due date for payment on his judgment of sentence. The judgment of sentence contains a section in which the trial court is required to set a due date for payment of court costs. This portion reads: "The due date for payment is _____. Fine [sic], costs, and fees not paid within 56 days of the due date are subject to a 20% late penalty on the amount owed." Thus, the 20% late fee imposed on defendant was not authorized by statute because the trial court failed to initially assign defendant a due date for payment of court costs. MCL 600.4803(1). We conclude that this error was plain and affected defendant's substantial rights. See *Carines*, 460 Mich at 763-764. Accordingly, we vacate the 20% late fee assessed against defendant and remand to the trial court. On remand, the

trial court must correct the judgment of sentence by specifying a due date for defendant's court costs.[4]

## IV. COURT COSTS

Although not raised before the trial court, defendant argues that the $1,300 in court costs assessed by the trial court are an unconstitutional tax under the Michigan Constitution because the authorizing statute fails to refer to creating a "tax," rendering it obscure, and because it violates the separation of powers. Defendant raises the precise issues addressed in *People v Cameron*, 319 Mich App 215, 236; 900 NW2d 658 (2017), wherein this Court, in affirming the imposition of court costs against the defendant, held:

> MCL 769.1k(1)(b)(*iii*) is a revenue-generating measure, and the courts forcibly impose the assessment against unwilling individuals. Therefore, it is a tax rather than a governmental fee. Although the statute does not expressly state that it imposes a tax, the statute is neither obscure nor deceitful, and therefore, it does not run afoul of the Distinct Statement Clause of Michigan's Constitution. Finally, because a trial court must establish a factual basis for its assessment of costs to ensure that the costs imposed are reasonably related to those incurred by the court in cases of the same nature, the legislative delegation to the trial court to impose and collect the tax contains sufficient guidance and parameters so that it does not run afoul of the separation-of-powers provision of Const 1963, art 3 § 2.

Defendant's claim of error cannot succeed because this Court is bound by its earlier resolution of these same issues in *Cameron*. MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court[.]").

## V. CONCLUSION

We affirm defendant's conviction and sentence, but vacate the assessment of the 20% late fee and remand for correction of the judgment of sentence to reflect a due date for payment of court costs. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Mark T. Boonstra
/s/ Anica Letica

---

[4] As we have found an error in the imposition of the late fee under the statute, we decline to address defendant's argument that the imposition of the late fee was in violation of his due process rights. Upon remand, defendant may request a waiver of the late fee if he chooses.