HALL v SECRETARY OF STATE

OPINION OF THE COURT

1. CONSTITUTIONAL LAW—RIGHT TO COUNSEL—CIVIL PROCEEDINGS.

   A constitutional right to counsel is not afforded to a defendant in a civil proceeding to revoke a governmentally granted privilege such as the right to drive an automobile.

2. AUTOMOBILES—DRIVERS' LICENSES—SUSPENSION OF DRIVERS' LICENSES—CONSTITUTIONAL LAW—DUE PROCESS.

   Suspension of issued drivers' licenses involves state action that adjudicates important interests of the licensees and the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment to the Constitution (US Const, Am XIV).

3. CONSTITUTIONAL LAW—RESTRAINTS—STATE POWER—ENTITLEMENTS—TERMINATING ENTITLEMENTS—RIGHTS—PRIVILEGES.

   Constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a "right" or a "privilege".

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 168, 312.
[2] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 109–124.
[3] 16 Am Jur 2d, Constitutional Law § 334.
[4] 16 Am Jur 2d, Constitutional Law §§ 542, 543.
[5] 16 Am Jur 2d, Constitutional Law § 549.
[6, 7] 29 Am Jur 2d, Evidence §§ 555, 556 (and supp.).
[8–14] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 259, 260, 332–334.

   Admissibility and weight of evidence based on scientific test for intoxication or presence of alcohol in system. 159 ALR 209.

   Requiring submission to physical examination or test as violation of constitutional rights. 25 ALR2d 1407.

   Qualification as expert to testify as to findings or results of scientific test to determine alcoholic content of blood. 77 ALR2d 971.

   Admissibility in criminal case of evidence that accused refused to submit to scientific test to determine amount of alcohol in system. 87 ALR2d 370.

4. CONSTITUTIONAL LAW—DUE PROCESS—NATURE OF DUE PROCESS.

Due process is not a technical conception with a fixed content unrelated to time, place and circumstances; its very nature negates any concept of inflexible procedures universally applicable to every imaginable situation; it is compounded of history, reason, and the past course of decisions.

5. CONSTITUTIONAL LAW—DUE PROCESS—PROCEDURES—GOVERNMENTAL FUNCTION.

Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the governmental function involved as well as the private interest that has been affected by governmental action.

6. CRIMINAL LAW—CONSTITUTIONAL LAW—DRUNK DRIVING—MIRANDA WARNINGS—RIGHT TO COUNSEL—RIGHT TO TELEPHONE CALL.

If a drunk driving suspect were given *Miranda* warnings at the time of his arrest but not allowed a single phone call to his attorney, he would be placed in the contradictory situation of being told of a right to consult counsel and then, if he seeks to exercise that right, being told that the previously given advice was inoperative.

7. CRIMINAL LAW—SUSPECTS—CUSTODY—RIGHT TO TELEPHONE CALL.

Stationhouse policy which prohibits a suspect from making a telephone call until he cooperates with the police is not commendable police practice.

8. AUTOMOBILES—DRUNK DRIVING—IMPLIED CONSENT—BREATHALYZER TEST—REFUSAL TO TAKE TEST—REASONABLE REFUSAL—COERCION.

A plaintiff's refusal to take a Breathalyzer test is reasonable where he is refused the right to make a telephone call first and that refusal is in order to coerce him into cooperating with the police.

DISSENT BY D. E. HOLBROOK, J.

9. APPEAL AND ERROR—STANDARD FOR REVIEW—AUTOMOBILES—DRUNK DRIVING—BREATHALYZER TEST—REFUSAL TO TAKE TEST—REASONABLENESS.

*The task of the Court of Appeals on review of a circuit court decision that a plaintiff automobile driver's refusal to submit to*

*a Breathalyzer test was unreasonable is simply to determine whether the circuit court's decision was clearly erroneous.*

10. STATUTES—IMPLIED CONSENT LAW—BREATHALYZER TEST—CONSTITUTIONAL LAW—RIGHT TO COUNSEL.

*The Legislature has determined that the individual and not his attorney shall make the decision whether to take a Breathalyzer test and there is no specific statutory provision for consultation between the individual and his attorney (MCLA 257.625d).*

11. AUTOMOBILES—STATUTES—IMPLIED CONSENT LAW—BREATHALYZER TEST—RIGHT TO REFUSE TEST.

*A Breathalyzer test could be compelled in the absence of statute; therefore, the right to refuse the test is statutory and not constitutional (MCLA 257.625d).*

12. AUTOMOBILES—STATUTES—DRUNK DRIVING—IMPLIED CONSENT LAW—CRIMINAL LAW—MIRANDA WARNINGS.

*There is no need to give* Miranda *warnings to a drunk driving suspect who is asked whether he wishes to submit to a Breathalyzer test if the suspect's rights under the implied consent statute are properly explained to him (MCLA 257.625c, 257.625d).*

13. CONSTITUTIONAL LAW—RIGHT TO COUNSEL—RIGHT AGAINST SELF-INCRIMINATION—CRIMINAL LAW—DRUNK DRIVING—IMPLIED CONSENT LAW—BREATHALYZER TEST—RIGHT TO REFUSE TEST.

*A drunk driving suspect asked by police officers to submit to a Breathalyzer test has no right to have an attorney present prior to submission to the test where the suspect was not being questioned about the possible commission of a criminal act at the time he was asked to take the test and was informed of his rights under the implied consent statute, and made no argument that he was confused as to his rights to refuse to take the test, as to his right to counsel, and as to his right against self-incrimination (MCLA 257.625c, 257.625d, 257.625e, 257.625f).*

14. CONSTITUTIONAL LAW—DUE PROCESS—TERMINATING PRIVILEGE TO DRIVE—NOTICE—OPPORTUNITY FOR HEARING—BREATHALYZER TEST—REFUSAL TO TAKE TEST.

*Due process requires that when a state seeks to terminate an interest such as the privilege to drive an automobile it must afford notice and opportunity for hearing appropriate to the nature of the case before termination becomes effective, and a drunk driving suspect who refused to submit to a Breathalyzer test and was given notice and a license appeal hearing and a de*

novo *hearing in circuit court before his license was suspended was accorded due process.*

Appeal from Eaton, Willard L. Mikesell, J. Submitted Division 2 January 14, 1975, at Lansing. (Docket No. 18386.) Decided April 23, 1975.

Petition in circuit court by Wayne E. Hall, Sr., plaintiff, to review the suspension of his driver's license by the Secretary of State, defendant. Suspension of driver's license affirmed. Plaintiff appeals by leave granted. Reversed.

*Jack P. Koestner,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *George M. Elworth,* Assistant Attorney General, for defendant.

Before: T. M. BURNS, P. J., and D. E. HOLBROOK and M. J. KELLY, JJ.

M. J. KELLY, J. Plaintiff Wayne E. Hall, Sr. was arrested July 20, 1973 at the scene of a minor property damage accident in Delta Township, Eaton County. The accident occurred at about 6 p.m. He was handcuffed at the scene, placed under arrest and taken in the police car to the Eaton County Jail at Charlotte. Plaintiff was charged with driving while under the influence of intoxicating liquor, MCLA 257.625; MSA 9.2325. According to his testimony, plaintiff refused a Breathalyzer test under the following circumstances:

"He [the deputy] asked me if I would take a Breathalyzer test, and I told him I would but I would like my attorney's opinion before I did, and I would also like to make a phone call to him * * * ."

"He said 'no,' that I didn't need no attorney, and I

asked him—I says: If I could call my wife because she should be notified, and he says, 'no, you're not even calling her.'

"*Question:* Now what time of the day was this?

"*Answer:* Approximately around oh probably quarter to seven."

The License Appeal Board held on August 29, 1973 that plaintiff's refusal to take the Breathalyzer test was in violation of the section of the Michigan Motor Vehicle Code dealing with implied consent. An order of the Secretary of State suspending plaintiff's license for 90 days was affirmed on appeal to the Eaton County Circuit Court. Application for leave to appeal to this Court was granted.

At the hearing before the License Appeal Board the police officer gave as his reason for refusing plaintiff an opportunity to make a telephone call the refusal to sign a "booking card". This was verified at the *de novo* hearing in circuit court when plaintiff was questioned by the prosecutor:

"*Question:* You refused to sign the booking card and the receipt for your valuables, didn't you? * * *

"*Answer:* I did not refuse to sign for my valuables * * *

"*Question:* Did you sign anything?

"*Answer:* Nope."

Plaintiff contended at the License Appeal Board hearing and at the *de novo* hearing in circuit court that under the circumstances his refusal to submit to the Breathalyzer test was reasonable. Defendant Secretary of State urges that any refusal to take a Breathalyzer test based upon a claimed right to be represented by counsel or even to consult with counsel is per se unreasonable because "[t]here is

no provision in the Michigan Implied Consent Law *[sic]* either calling for or prohibiting involvement of an attorney in the administration of the [B]reathalyzer test".

The issue raised is one of first impression in this state. In Michigan's landmark implied consent case, *Collins v Secretary of State,* 384 Mich 656, 668; 187 NW2d 423, 429 (1971), the Court noted the facts under which the accused driver refused to take a test. The Court then said, "[w]e now consider whether this refusal was reasonable". The ultimate determination of that case was based upon its circumstances and its facts but we find it significant that when Collins was offered a breath test pursuant to the statute he was also granted permission to call his attorney.

In the case at bar the refusal of the arresting officer to permit plaintiff to make a phone call appears to be arbitrary. Plaintiff testified that the officer gave no reason. The officer asserted at the License Appeal Board hearing that it was the policy of the department to refuse prisoners a telephone call unless and until they signed a booking card. Although appellant never did sign a booking card apparently the requirement was declared "inoperative" after 7 hours and he was allowed to call his wife. We think it is reasonable to infer that if appellant had signed the booking card he would have been permitted to make his telephone call. The procedure appears to be coercive rather than an attempt to expedite the test.

The conceptual problem permeating the issue arises from the fact that defendant was arrested for a criminal offense, driving under the influence of intoxicating liquor, MCLA 257.625(a); MSA 9.2325(1). That arrest set in motion the chain of events which leads to the instant civil appeal. The

Breathalyzer test itself has apparent and serious consequences both civilly and criminally.

If the arrestee decides to take the test and the results show that his blood contains at least 0.10% alcohol, he is presumed to have been under the influence of intoxicating liquor. MCLA 257.625a(1)(c); MSA 9.2325(1)(1)(c). A conviction, aided by the statutory presumption, may result for a first offender in a fine of $100 and a jail sentence of 90 days. The third conviction within 10 years is a felony conviction.

If the arrestee refuses to take the test and thereafter fails to request a hearing within 14 days or fails to prevail at the hearing, he may lose his license for up to two years. MCLA 257.625f(1); MSA 9.2325(6)(1), MCLA 257.625f(3); MSA 9.2325(6)(3). For many occupations, possession of a valid driver's or chauffeur's license may be indispensable. In our mobile society the loss of driving privileges may impair and, in some cases, effectively preclude a man from pursuing his livelihood.

We agree with defendant that since this is a civil proceeding revoking a governmentally granted privilege, the right to drive, a constitutional right to counsel is not afforded as in the landmark criminal cases of *Escobedo v Illinois,* 378 US 478, 486; 84 S Ct 1758, 1762; 12 L Ed 2d 977, 983 (1964) and *Miranda v Arizona,* 384 US 436; 86 S Ct 1062; 16 L Ed 2d 694 (1966). However, while this is a civil proceeding it is one on which serious consequences rest. In *Bell v Burson,* 402 US 535, 539; 91 S Ct 1586, 1589; 29 L Ed 2d 90, 94 (1971), the United States Supreme Court said: ·

"Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus

involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. *Sniadach v Family Finance Corp,* 395 US 337; 89 S Ct 1820; 23 L Ed 2d 349 (1969); *Goldberg v Kelly,* 397 US 254; 90 S Ct 1011; 25 L Ed 2d 287 (1970). This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.' "

Therefore, we must examine the proceedings to see if they meet the due process requirement of fundamental fairness, especially where in the early stages of this controversy the trappings were akin to criminal proceedings. We are guided by the language of *Cafeteria Workers v McElroy,* 367 US 886, 895; 81 S Ct 1743, 1748; 6 L Ed 2d 1230, 1236 (1961):

"The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation. * * * ' "[D]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' It is 'compounded of history, reason, the past course of decisions * * * .'

"[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." (Citations omitted.)

Regarding governmental interest, it may be that prudent police practice in arresting a drunk driving suspect is to give the *Miranda* warnings to avoid the risk that inculpatory statements will later be declared inadmissible in the drunk driving

prosecution. The warnings would include advice as to the right of counsel. Adopting defendant's position, that the person arrested is not entitled to a single phone call to his attorney, would result in a contradictory situation. The arrestee would be told that he has a right to consult counsel, and then, when he sought to exercise that right, he would be told that the previously given advice was inoperative. Presumably this would be accomplished with a pedagogical explanation of the distinction between civil and criminal proceedings, either of which may result in the loss of a driver's license.

Courts in other jurisdictions have confronted the situation where an arrestee is told, pursuant to *Miranda,* of his right to counsel and then refuses to take the test until given an opportunity to call counsel. *Rust v Department of Motor Vehicles,* 267 Cal App 2d 545; 73 Cal Rptr 366 (1968), *Wiseman v Sullivan,* 190 Neb 724; 211 NW2d 906 (1973), *State Department of Highways v Beckey,* 291 Minn 483; 192 NW2d 441 (1971). All have held that because of the inherent confusion of the suspect, his refusal to take the test is reasonable and license revocation is improper.

MCLA 257.625f(2)(c); MSA 9.2325(6)(2)(c) provides for a hearing to decide "[w]hether the person reasonably refused to submit to the test upon the request of the officer". Thus, urges the plaintiff, the implicit statutory mandate that one's license not be revoked where the refusal to submit is reasonable raises the question of whether the plaintiff should be allowed advice of counsel to make an informed decision.

Plaintiff was impaled on the horns of the civil/criminal dilemma. He could participate in the Breathalyzer test possibly to later find that his participation was ill-advised. Alternatively, he

could refuse to take the test and face the loss of his license.

The Legislature saw fit, and properly so, to provide an agonizing choice for one accused of the serious crime of drunk driving. But the legislation does permit a choice. An arrestee can reasonably refuse to take the test. That deliberate legislative alternative takes on significance when one considers that the Legislature could have constitutionally set forth the unconditional requirement that the person arrested take the Breathalyzer test.

In weighing the individual interest against the governmental interest, it is suggested that to avoid the problems mentioned above, the governmental interest is best served by allowing the suspect a phone call to his attorney. A caveat: We are not suggesting a constitutional right to counsel—we are suggesting a reasonable due process approach to a certain set of circumstances. We are not unaware of the fact that the probative value of the test decreases with the delay in taking it. Here, however, approximately one hour had already elapsed, and a five minute telephone conversation with counsel would not constitute undue delay. It is noteworthy that the trial judge misperceived the importance of the decision facing plaintiff. The court inquired:

"What is there about these particular events that you felt it was necessary to call your attorney more than, shall we say, any other event that takes place in your life day by day?"

Plaintiff argues strongly that fundamental fairness and the statutory language require that the tactical choice allowed be knowingly made. Particularly so when one considers the impact of the choice and the fact that by hypothesis, the person

arrested is intoxicated and probably not at his best. A similar fact situation set in the context of a criminal proceeding led the Court in *Escobedo v Illinois,* 378 US 478, 486; 84 S Ct 1758, 1762; 12 L Ed 2d 977, 983 (1964), to note:

> "The 'guiding hand of counsel' was essential to advise petitioner of his rights in this delicate situation."

However, we do not find it necessary to ground our decision on appellant's "right to counsel". We do not say he has such an unqualified or absolute right in these proceedings. We do say that a stationhouse policy which prohibits a suspect from making a telephone call does not constitute commendable police practice.

Was appellant's refusal unreasonable? It does not seem to us unreasonable for a person to refuse to succumb to the wishes of a police officer employing an arbitrary device to "persuade" him to cooperate. It is indefensible to hold a man entirely incommunicado for 7 hours and only then, at 2 a.m., to permit him to call his wife. We won't speculate on her concern—he was arrested at about the supper hour. The state is hardly in a position to complain of plaintiff's negative response to the officer's draconian tactics. We are persuaded that the great weight of the evidence shows that the plaintiff's refusal to take the Breathalyzer test was reasonable under these circumstances.

We reverse the decision of the trial court and reverse the order suspending plaintiff's license. No costs, a public question being involved.

T. M. BURNS, J., concurred.

D. E. HOLBROOK, J. *(dissenting).* Plaintiff, Wayne

E. Hall, Sr., was arrested July 20, 1973, sometime before 7 p.m., at the scene of a minor property damage accident in Delta Township, Eaton County. A deputy charged him with driving while under the influence of intoxicating liquor, contrary to MCLA 257.625; MSA 9.2325. He was advised of his right to consent to or refuse to take a Breathalyzer test and of the possibility of suspension of his driver's license should he refuse.

Hall apparently refused to sign a booking card upon his arrival at the jail. He refused to submit to the test, claiming that he wanted to telephone his attorney or have his attorney present before submitting to the test. There is no showing that Hall was given the *Miranda* [1] rights. The deputy refused this request for consultation with the attorney and no test was given. On August 29, 1973, the License Appeal Board held that plaintiff's refusal to take the Breathalyzer test was in violation of the implied consent law. The Secretary of State ordered plaintiff's license suspended for 90 days. A *de novo* hearing was had in circuit court, pursuant to MCLA 257.625f(3); MSA 9.2325(6)(3). The circuit court after its *de novo* hearing found that the driver had unreasonably refused to take the test. Plaintiff has here appealed and asserts, in essence, that the disallowance of consultation with his attorney constituted a denial of due process of law. With this assertion this writer cannot agree.

This Court does not conduct another *de novo* hearing but determines on review whether the circuit court's decision was clearly erroneous. The task herein is plain and simple: to determine whether the trial court was clearly erroneous in determining that plaintiff's refusal was unreasona-

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

ble. The Legislature has determined the propriety of who shall make the decision to take the test or not, *viz.,* the individual, not his attorney and without a specific provision for consultation between the two.

In the absence of statute, a Breathalyzer test could be compelled. See *People v Keen,* 56 Mich App 84; 223 NW2d 700 (1974), and *People v Gebarowski,* 47 Mich App 379; 209 NW2d 543 (1973), relying upon *Schmerber v California,* 384 US 757; 86 S Ct 1826; 16 L Ed 2d 908 (1966). Thus, the right to refuse the Breathalyzer test is statutory and not constitutional. As the statutory material does not provide for a specific right to consult with an attorney, this writer is at a loss to determine how this Court may expand the rights under the legislation in the absence of a constitutional mandate that such is necessary. This writer, also, condemns, based upon plaintiff's refusal to sign the booking card, the disallowing of plaintiff to call his family until 2 a.m. the next morning. This writer cannot, however, say that there was a constitutional right to consult with an attorney and therefore the finding by the License Appeal Board and the trial judge that plaintiff's refusal to take the Breathalyzer test was unreasonable was proper. The suspension of the license should be affirmed.

This writer fails to see that *Rust v Department of Motor Vehicles,* 267 Cal App 2d 545; 73 Cal Rptr 366 (1968), *Wiseman v Sullivan,* 190 Neb 724; 211 NW2d 906 (1973), or *State Department of Highways v Beckey,* 291 Minn 483; 192 NW2d 441 (1971), are directly applicable to the present case. For instance, in the *Beckey* case, at 291 Minn 486, 487; 192 NW2d 444–445, the Court wrote, in pertinent part:

"The questions of whether a person arrested refused

to take the test or had reasonable grounds to do so are questions of fact. Where, as here, the evidence and the inferences to be drawn therefrom conflict, the court holding the hearing must find the facts. Upon appeal, the question presented is whether such findings are supported by the evidence.

\* \* \*

"Where the interrogating officer undertakes to repeat *Miranda* warnings given by the arresting officer at the time of the arrest as well as to inform the person arrested of his rights and obligations under the implied-consent statute without at the same time making clear that his constitutional rights to counsel and to remain silent do not apply to the implied-consent statute, it is not unlikely that confusion will occur, resulting in the arrested person's being misled into believing that he may remain silent and that he is being offered the option to postpone his decision and the chemical test until he can consult an attorney. Where the responses of the arrested person upon being requested to submit to a chemical test indicate that he is asserting a right which he has just been told he is free to assert, it is incumbent upon the officer to make clear that he has no constitutional right to consult an attorney before deciding whether he will submit to a test but merely that, at the time the request is made, he has a right to choose between permitting the test or refusing the test at the risk of revocation of his driver's license."

For an in-depth discussion of the foundations of the *Beckey* case, see *Agnew v Hjelle,* 216 NW2d 291, 296–297 (ND 1974), disclosing that in no small part the decision may have been based upon Minnesota 12A MSA 169.123(6) which provides, *inter alia,* for the hearing to "be recorded and proceed as in a criminal matter".

The *Agnew* case goes on to discuss the so-called "confusion test" under *Rust, supra.* The Court thereafter, at 216 NW2d 297–298, quotes from *Cahall v Department of Motor Vehicles,* 16 Cal

App 3d 491, 497; 94 Cal Rptr 182, 186 (1971), explaining *Rust,* thusly:

" 'Finally, appellant maintains that he was so confused concerning the taking of a chemical test that his refusal should be vitiated. While there is authority that where a driver refuses to take a test because he was confused by the *Miranda* warnings as to his constitutional rights and the demand for a test under the Implied Consent Law (see *Rust v Department of Motor Vehicles,* 267 Cal App 2d 545, 547; 73 Cal Rptr 366 [1968]), this rule does not apply when the arresting officer explicitly informs the arrestee that the *Miranda* rights do not apply to the taking of a chemical test pursuant to the Implied Consent Law. *(Reirdon v Director of Department of Motor Vehicles,* 266 Cal App 2d 808, 811; 72 Cal Rptr 614 [1968].)*

" 'The question whether a driver "refused" a test within the meaning of the statute is a question of fact. *(Walker v Department of Motor Vehicles,* 274 Cal App 2d 793, 799; 79 Cal Rptr 433 [1969].) When there is no evidence of confusion, and where apparent confusion is not demonstrated and is not apparent to the arresting officer, no further clarification on the part of the arresting officer is required. (See *Wethern v Orr,* 271 Cal App 2d 813, 815; 76 Cal Rptr 807 [1969].)

" 'The *Rust* "confusion doctrine" is inapplicable because the appellant does not maintain that he suffered any bewilderment as a result of the constitutional admonition. In determining whether an arrestee's refusal is the result of confusion, the crucial factor is not the state of the arrestee's mind; it is the fair meaning to be given his response to the demand that he submit to the chemical test. *(Maxsted v Department of Motor Vehicles,* 14 Cal App 3d 982, 986; 92 Cal Rptr 579 [1971]), *Cahall v Department of Motor Vehicles,* 16 Cal App 3d 491; 94 Cal Rptr 182, 186 (1971).' "

While "prudent police practice in arresting a drunk-driving suspect is to give the *Miranda* warnings", where it is desired to question the suspect

concerning the offense, there is no showing that the *Miranda* rights were given here. Moreover, to do so is to invite exactly the type of error that the Minnesota Court referred to. There is no need to give *Miranda* warnings if the rights under the statute are explained properly. Here, plaintiff has made no argument that he was confused. The following occurred:

*"The Court:* What is there about these particular events that you felt it was necessary to call your attorney more than, shall we say, any other event that takes place in your life day by day?

*"Mr. Hall:* I figure that that was my *right* to have an attorney *present.* I knew at the time of my tickets and also I knew I had three or four beers and the officer at the time was a little sarcastic, and I wanted my attorney present at the time." (Emphasis supplied.)

There is no right to have an attorney present in this case as there is no showing that plaintiff was being questioned. And plaintiff has made no argument that he was hopelessly confused as to his rights or lack of rights.

This writer fails to understand how the implied-consent law[2] can be of any value if (1) the means of invited error are allowed or (2) a drunk driver may be allowed to escape the entire process with no sacrifice or penalty involved. This is exactly what could, if not would, happen in these cases when the individual is just coherent enough to realize that delay is advisable and if the lawyer is unavailable or can't come immediately there will be time for the effects of the alcohol to dissipate; also, delays on the part of lawyers could serve the same purpose. The intent of the statute, *i.e.,* to protect society from those who are drunk and

---

[2] MCLA 257.625c; MSA 9.2325(3).

driving on our highways[3] and who may do so again, is then effectively defeated.

In *Wiseman v Sullivan, supra,* at 190 Neb 726; 211 NW2d 908, the Court said:

"The question here is whether the evidence supports the conclusion that there was a refusal, and if there was, the reasonableness or unreasonableness of the refusal. § 39-727.17, R.S.Supp., 1972."

This is the same question, but without the added fact that plaintiff herein was not given his *Miranda* rights, with which this Court is faced. There Wiseman had consented to the test, made *three* phone calls (two unsuccessful attempts to secure counsel and one to attempt to arrange bond), and a *"Miranda* type warning" was given which stated:

" 'You have the right to consult with or obtain an attorney and have him present with you during the questioning or *any part of my investigation.* Do you understand that? Do you willingly waive your right to remain silent and your right to have an attorney present with you, or the right to consult with an attorney at this time?' (Emphasis supplied.)" 190 Neb 727; 211 NW2d 909.

Thereafter, the subject refused to take the test. Later, Wiseman informed the police that he wished to take the test but was refused the same because too much time had elapsed. The Court said, at 190 Neb 728; 211 NW2d 910:

"At the very best, the commingling of the *Miranda* warnings and the implied consent statute resulted in a high degree of ambiguity."

[3] *See Collins v Secretary of State,* 384 Mich 656; 187 NW2d 423 (1971).

The Court held:

> "*If a Miranda type warning is given* in connection
> with information concerning the implied consent stat-
> ute, it is incumbent upon the arresting officer to explic-
> itly inform the arrested person that the constitutional
> rights to counsel and against self-incrimination which
> may have been previously explained are not applicable
> to the decision the driver must make concerning the
> giving of samples, that he has no right to consult with
> an attorney before making that decision, and that the
> right against self-incrimination does not permit the
> driver to refuse to make an answer to the request for
> such samples." (Emphasis supplied.)[4] 190 Neb 729; 211
> NW2d 910.

Additional light is thrown upon the issue in the
case of *Bell v Burson,* 402 US 535; 91 S Ct 1586; 29
L Ed 2d 90 (1971), which involved suspension of
motor vehicle registration and driver's license for
failure to post security to cover damages claimed
by aggrieved parties in accidents. The procedural
due process there involved was the ability to adju-
dicate liability through litigation. The Court held,
at 402 US 540; 91 S Ct 1590; 29 L Ed 2d 95:

> "[T]hat procedural due process will be satisfied by an
> inquiry limited to the determination whether there is a
> reasonable possibility of judgments in the amounts
> claimed being rendered against the licensee."

The majority, in this case, are attempting to ex-
pand the parameters of procedural due process in
civil matters through judicial definition and exten-
sion of "fundamental fairness".

> "[I]t is fundamental that except in emergency situa-

---

[4] As to *Wiseman, see Department of Public Safety v Nystrom,* —
Minn —; 217 NW2d 201, 202 (1974).

tions (and this is not one) due process requires that when a State seeks to terminate an interest such as that here involved, it must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective." (Emphasis in original.) *Bell v Burson,* 402 US 542; 91 S Ct 1591; 29 L Ed 2d 96 (1971).

Thus, it is obvious that the procedural right there at issue was notice and hearing. In the present case, there has been a license appeal hearing and a *de novo* hearing in circuit court. There can be no question but that a driver's license is a valuable asset and an important *privilege,* but one with which goes responsibility certainly including the responsibility to not drive while impaired or intoxicated and that a penalty must be meted if that is the case.

This writer would uphold the circuit court in finding that the refusal to take the test was unreasonable and properly based upon the evidence before it.