NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0146n.06

No. 15-1352

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Mar 16, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CHRISTOPHER JAMES BAILEY | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| CITY OF HOWELL; CITY OF HOWELL POLICE; | ) | COURT FOR THE EASTERN |
| GEORGE BASAR; LUKE LORENZ | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: DAUGHTREY, ROGERS, and WHITE, Circuit Judges.

ROGERS, Circuit Judge. On September 25, 2011, City of Howell Police Officer Luke Lorenz initiated a traffic stop of Christopher James Bailey that led to the arrest of Bailey for operating while intoxicated, the drawing of his blood for alcohol testing, and the suspension of his driver's license. Bailey brought 42 U.S.C. § 1983 claims in federal district court against the City of Howell and Lorenz, alleging violations of Bailey's Fourth Amendment and Fourteenth Amendment rights. In the end, the district court properly granted summary judgment to Lorenz and the City of Howell on each of Bailey's claims.

I.

At around 2:00 a.m. on September 25, 2011, Bailey left his ten-year high-school reunion at the Shark Club in Howell, Michigan. Bailey testified that as he exited the Shark Club's parking lot, he "immediately noticed [an] island median" in the road, which he drove around

since he "felt it was not safe for [him] to back up." Lorenz, who was in a nearby parking lot, testified that he observed Bailey exit the Shark Club's parking lot and drive the wrong direction onto Michigan Avenue, the highway outside the Shark Club's parking lot.

After Lorenz initiated a traffic stop of Bailey's car by activating his emergency lights, Bailey pulled into a nearby driveway. Lorenz then exited his vehicle and approached Bailey's car.[1] After telling Bailey that he was stopped for driving the wrong way "on the one way" and because Bailey's license plate was expired, Lorenz asked Bailey, "How much you been drinking?" Bailey responded that he had "one" drink, and Lorenz replied, "You had one? Just one? Because I can smell it pretty strong coming out of you." Lorenz then established that Bailey had no issues with his eyes, gave Bailey a brief eye or vision test, and returned to his patrol car.

A few minutes later, Lorenz returned to Bailey's car and asked him to step outside of his car. After Bailey did so, Lorenz stated that he intended to conduct a field sobriety test. After some back and forth between Lorenz and Bailey, Bailey agreed to take the field sobriety test. Lorenz then conducted three sobriety tests. Lorenz moved his fingers back and forth across Bailey's face to check him for nystagmus.[2] After performing this test, Lorenz concluded that Bailey exhibited nystagmus in both eyes. Lorenz then had Bailey perform a walk-and-turn test and a one-leg stand test, both of which Bailey passed.

Lorenz then asked Bailey when he had his last drink, to which Bailey responded "I'd say a half hour ago" but subsequently stated that he might have had "a drink-and-a-half." Lorenz then asked Bailey to take a preliminary breath test. After some back and forth between Bailey

---

[1]The undisputed facts of Bailey's arrest are based upon a Howell Police Department video recording of the arrest.
[2]"Nystagmus describes fast, uncontrollable movements of the eyes, which can be caused by excessive alcohol." *Bailey v. City of Howell*, No. 2:13−cv−14082, 2015 WL 736599, at *2 (E.D. Mich. Feb. 20, 2015) (citation omitted).

and Lorenz, Bailey ultimately refused to take the preliminary breath test. Lorenz then handcuffed Bailey and put him in the back of Lorenz's squad car.

About ten minutes after Lorenz arrested Bailey, Lorenz told Bailey that he was under arrest for operating a vehicle while intoxicated due to the consumption of an alcoholic liquor or controlled substance or a combination of both and for operating a vehicle while visibly impaired due to the consumption of an alcoholic liquor or controlled substance or a combination of both. Lorenz then asked Bailey to submit to a "chemical test" for alcohol and/or controlled substances in his body. Lorenz explained to Bailey that refusal to take the chemical test "shall result" in suspension of his license. In Michigan, vehicle operators, subject to some exceptions, are deemed to have consented to chemical tests of their blood, breath, or urine for alcohol upon being arrested for operating a vehicle while intoxicated or impaired. Mich. Comp. Laws 257.625c. Further, if a person refuses a chemical test after the person has been arrested for operating while intoxicated or impaired, the officer must "immediately confiscate the person's license" and issue a temporary license or permit to the person. Mich. Comp. Laws 257.625g. Lorenz then asked Bailey "Will you take a breath test?" and Bailey responded, "Not until I speak to my attorney." About twenty seconds later, this exchange occurred:

BAILEY: That is—just to clarify that is neither a yes or a no.

LORENZ: It counts as a no.

B: [Laughs.] Okay. [Pause] Whatever you want.

LORENZ ON RADIO: Send me the on-call judge information please.

B: Are you asking for a test right here or at the station?

L: I'm sorry, what?

B: Are you asking for a test here or at the station?

L:  The test that I was offering you would have been administered at the jail, but now we're going to go to the hospital, and we're going to do a blood draw.

B:  Oh well then if it's at the ja—then that's fine.  I didn't know—you didn't clarify what you were asking.

L:  Nope, that's alright, we'll go to the hospital.

B:  Sir, you didn't clarify what you were asking.

L:  Sir, I read you exactly what I needed to read you.  You said no.

B:  [Laughs.]

L:  So, that's alright.  That just means you don't have a driver's license anymore.  Fine with me.

After further discussion with Lorenz about whether he was required to tell Bailey where the test would be taken, Bailey asked Lorenz if there was a video camera in the car and Lorenz responded that there was.  The following exchange then occurred:

BAILEY:  Okay.  Good, because I did not deny that I would not take it.

LORENZ:  Your exact words to me were—

B:  I said I'd like to speak with my attorney.

L:  —not until I speak to my attorney.

B:  Did that say I wasn't going to?  I don't think that's what I said.

L:  Okay.

Lorenz then drove Bailey to the hospital.  At around 3:00 a.m., Lorenz spoke with the on-call judge and "swore to the facts of the warrant."  The on-call judge then authorized the search warrant.  A nurse conducted a blood draw, which indicated that Bailey's blood-alcohol level was .07.  At some point during the evening, Lorenz also confiscated Bailey's driver's license and issued him a temporary driving permit.

As a result of the night's events, Bailey was charged with operating while impaired, operating without insurance, driving on the wrong side of a divided highway, having expired license plate tabs, and refusing the preliminary breath test. The prosecutor later dropped the charges of operating while impaired, driving on the wrong side of a divided highway, and refusing the preliminary breath test in exchange for Bailey's plea of guilty to the added charge of careless driving and to the charges of having expired license plate tabs and operating without insurance.

On November 9, 2011, Michigan Secretary of State Hearing Officer Steve S. Bandy held a hearing "for the purpose of determining whether [Bailey's] driver's license . . . should be suspended under [Michigan's] implied consent statute." One of the issues to be determined at the hearing was whether Bailey had unreasonably refused to take a chemical test for alcohol. The in-car video of Bailey's arrest was not available at this hearing because the Howell Police Department would not release the video pending the results of Bailey's chemical test. Lorenz and Bailey both testified at the hearing. On examination by the hearing officer, Lorenz testified:

> Q. So Mr. Bailey was offered both the [preliminary breath test] and the regular breathalyzer, as well?
>
> A. That's correct, sir.
>
> Q. And he refused both?
>
> A. He refused both.
>
> Q. All right. Was there indication that he was unclear or unsure as to why he needed to take a second test?
>
> A. No. When I completed reading him his chemical test rights, his only response was to my question on will he take a breath test was not 'til I speak to an attorney.
>
> Q. Okay. And what did you respond to that?

A. I don't recall what my response to that was. He made no further requests to speak to an attorney after that point.

The hearing officer concluded that the evidence presented was "sufficient to find that [Bailey] refused the requested breath test, and that his refusal was unreasonable and in violation of the Implied Consent Law" and suspended Bailey's license for about a year. Bailey appealed this decision, and the hearing officer held a rehearing on July 20, 2012, after the video footage from Lorenz's car was available. Upon rehearing, the hearing officer concluded that Bailey's license should not be suspended because although Bailey "initially declined the offered test, [within] minutes he changed his mind and agreed to comply with the implied consent law. Since [he] 'cured' his initial refusal well before a search warrant was issued for a court ordered test, the test should have been given."

Bailey then filed a § 1983 action in district court, alleging that Lorenz had violated Bailey's Fourth and Fourteenth Amendment rights while acting under color of state law. Bailey's amended complaint stated six numbered counts, setting forth ten claims. Lorenz and the City of Howell moved for summary judgment. Lorenz and the City of Howell stated that they sought dismissal of Bailey's amended complaint in its entirety but did not make particularized arguments that related to each of the ten claims.

The district court granted summary judgment for Lorenz and the City of Howell on all of Bailey's claims. The district court held that Bailey's claim that Lorenz violated the Fourth Amendment by unlawfully arresting Bailey failed as a matter of law because the undisputed facts established probable cause to arrest Bailey for operating while intoxicated. *Bailey*, 2015 WL 736599, at *10−11.[3]

---

[3]Bailey also alleged that Lorenz violated Bailey's Fourth Amendment rights by initiating a traffic stop without reasonable suspicion. Bailey does not challenge the district court's decision that Lorenz had reasonable suspicion to stop Bailey.

The district court also granted summary judgment to Lorenz on Bailey's claim that his body was searched and his blood seized in violation of the Fourth Amendment. *Id.* at \*13. The district court determined that a reasonable juror could conclude that Lorenz omitted material information from the warrant affidavit. *Id.* at \*12. Nevertheless, the district court held that the blood draw was constitutional because a reasonable jury would conclude that the affidavit, once corrected to include this information, established probable cause to draw Bailey's blood for alcohol testing. *Id.*

The district court also held that Bailey's malicious prosecution claims failed as a matter of law. The court concluded that there was probable cause to prosecute Bailey for operating while intoxicated. *Id.* at \*14. The district court therefore held that Lorenz did not maliciously prosecute Bailey by participating in the criminal proceedings against him. *Id.* The district court also concluded that Lorenz had probable cause to believe that Bailey had unreasonably refused to take a chemical test. *Id.* at \*14−15. The district court therefore held that Lorenz did not maliciously prosecute Bailey by participating in the administrative proceeding that led to his license being suspended. *Id.* at \*15.

The district court further held that Bailey's claim that Lorenz violated his rights under the Fourteenth Amendment by testifying falsely at the administrative proceeding failed as a matter of law. *Id.* at \*18. The district court explained that a reasonable jury would conclude that Lorenz's testimony was not false. *Id.* at \*16. Accordingly, the district court concluded that Lorenz had not violated Bailey's Due Process rights. *Id.* Alternatively, the district court held that this claim failed as a matter of law because Lorenz was absolutely immune from suit based on his testimony. *Id.* at \*16−17.

The district court also granted summary judgment *sua sponte* on Bailey's claim that Lorenz had seized Bailey's license and driving privileges in violation of the Fourth Amendment. *Id*. at \*18−19. In doing so, the district court determined that its conclusion that Bailey's other claims failed as a matter of law also resolved this claim. *Id*.

The district court also denied Bailey's request for an injunction ordering the City of Howell to move or remove the island median and post signage along the highway around the Shark's Club exit. The district court reasoned that Bailey lacked standing to pursue the prospective injunctive relief. *Id*. at \*19.

II.

A.

The district court properly determined that Bailey's claim for unlawful detention failed as a matter of law because the undisputed facts establish that Lorenz had probable cause to arrest Bailey for operating while intoxicated. Probable cause to arrest exists when "the facts and circumstances within the officer's knowledge" are "sufficient to warrant a prudent person, or one of reasonable caution, in believing" that the suspect "has committed, is committing or is about to commit an offense." *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003) (internal citation omitted). The undisputed facts establish that Lorenz observed Bailey leave the Shark Club at two o'clock in the morning, saw Bailey drive carelessly, saw that Bailey had watery, blood-shot eyes, heard Bailey say that he had recently consumed alcohol and refuse to take a preliminary breath test, and smelled intoxicants on Bailey. Lorenz therefore had probable cause to arrest Bailey because these facts and circumstances were sufficient to warrant a prudent person in believing that Bailey had driven while intoxicated. The existence of probable cause, which is based on the totality of the circumstances, requires "only the probability, and not a

prima facie showing, of criminal activity." *Illinois v. Gates*, 462 U.S. 213, 235, 238 (1983) (citation and internal quotation marks omitted). Accordingly, these facts establish probable cause to arrest Bailey for driving while intoxicated even though Bailey passed the two balance tests, did not slur his words or stumble, and may have driven carelessly because the Shark Club's exit was not marked with proper signage, it was dark outside, and the trees on the island medium around which Bailey drove carelessly were similar to the trees on the opposite side of the road.

Lorenz's inconsistent use of the adjectives "moderate" and "strong" to describe the intoxicants Lorenz smelled on Bailey does not establish that Lorenz fabricated smelling any intoxicants on Bailey. Bailey contends that Lorenz's inconsistent testimony about the strength of the odor Lorenz smelled creates a genuine issue of material fact about whether Lorenz smelled any intoxicants on Bailey because in employment cases, courts view the fact that an employer "constantly changes [its] reasons for terminating an employee" as evidence that the employer's stated reasons for terminating the employee are a pretext for the employer's actual discriminatory reason for terminating the employee. Appellant Br. at 24. This assertion fails because unlike an employer who provided shifting reasons for terminating an employee, Lorenz consistently stated that Bailey smelled of intoxicants.

Lorenz's possible lack of nystagmus training also does not establish that he lacked probable cause to arrest Bailey. Even though a reasonable juror could conclude that Lorenz was not trained to diagnosis nystagmus, Lorenz's possible lack of training does not justify reversal of the district court's grant of summary judgment on Bailey's unlawful detention claim. The undisputed facts that Bailey had driven carelessly, had watery, blood-shot eyes, refused the preliminary breath test, said that he had recently consumed alcohol, had exited the Shark Club at around two o'clock in the morning, and smelled of intoxicants, are, as described above, sufficient

to establish probable cause to arrest Bailey for operating while intoxicated even if Lorenz had not been trained to diagnose nystagmus.

Further, the district court did not err in using Bailey's refusal to take a preliminary breath test in its probable-cause analysis. Bailey contends that using his refusal to submit to the preliminary breath test to establish probable cause violates his constitutional rights by requiring him to consent to a warrantless search of his breath or be arrested. However, the district court did not rely exclusively on Bailey's refusal to take the preliminary breath test, but rather looked at the totality of the circumstances. A person's refusal to submit to a field sobriety test, when "combined with evidence of alcohol consumption," can give rise to probable cause to arrest the person for driving under the influence of alcohol. *Kinlin v. Kline*, 749 F.3d 573, 580−81 (6th Cir. 2014).

B.

The district court also properly dismissed Bailey's claims that the warrant issued for the blood draw for alcohol testing was invalid because Lorenz's affidavit contained false statements, resulting in a blood draw that violated Bailey's Fourth Amendment rights. In order to prevail on such a claim, the Supreme Court requires "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). If the defendant can then establish "perjury or reckless disregard" by a preponderance of the evidence, "the affidavit's false material [must be] set to one side" and the "remaining content" must be reviewed to determine whether it is sufficient to establish probable cause. *Id*. at 156.

Material omissions from an affidavit are also relevant to the probable cause determination. *See Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) ("[I]n order to prevail

on a false-arrest claim, [the defendant i]s required to prove by a preponderance of the evidence that in order to procure the warrant, [the affiant] knowingly and deliberately, or with a reckless disregard for the truth, made false statements *or omissions* that create[d] a falsehood and such statements or omissions [we]re material, or necessary, to the finding of probable cause.") (emphasis added; quotation marks omitted) (quoting *Wilson v. Russo,* 212 F.3d 781, 786–87 (3d Cir. 2000)). Moreover, "the failure to include the information and a reckless disregard for its consequences may be inferred from the fact that the information was omitted[, but] in order for this inference to be valid, the defendant must show that the omitted material would be 'clearly critical' to the finding of probable cause." *United States v. Jacobs*, 986 F. 2d 1231, 1235 (8th Cir. 1993) (quoting *United States v. Reivich*, 793 F.2d 957, 961 (8th Cir. 1986)).

Several assertions may have been intentionally included, although false, or omitted from the affidavit. For example, Lorenz omitted from the affidavit affirmative information that Bailey passed the balance tests and ultimately consented to the chemical test.[4] Lorenz's omission of this information may have been intentional rather than accidental because Lorenz testified that he had included the reasons that he "believed that [Bailey] was intoxicated" in the warrant affidavit but did not "put in any reasons that would indicate that [Bailey] wasn't intoxicated." Lorenz may also have recklessly disregarded the truth when he stated in the affidavit that Bailey "appeared off balance while [the field sobriety test] instructions [were] given," because a reasonable juror could conclude, based on the video of Bailey's arrest, that he was not off-balance when these instructions were given.

When false statements and omissions have been deliberately made in order to procure the warrant, we "set aside the [false] statements and include the information omitted in order to

---

[4]Lorenz also omitted the fact that he may not have been trained to diagnose nystagmus, but we find that the absence of this information was not "clearly critical" to the probable cause determination.

determine whether the affidavit is still sufficient to establish probable cause." *Sykes*, 625 F.3d at 305 (citations omitted). In this case, despite the omissions and after any false material is set aside, the remaining information in the affidavit was sufficient to establish probable cause to draw Bailey's blood for alcohol testing. The affidavit should not have included the false allegation that Bailey was off-balance while instructions were given. And, it should have included the facts that he passed both balance tests and ultimately agreed to take a chemical test. But the affidavit properly established that Lorenz saw Bailey driving at two o'clock in the morning, smelled intoxicants on Bailey, believed that Bailey exhibited nystagmus in both eyes, and witnessed Bailey's initial refusal to take a preliminary breath test. In view of the totality of these circumstances, an objective, neutral judge could have found the existence of probable cause to draw Bailey's blood for alcohol testing, given that such a finding "requires only the probability of criminal activity not some type of 'prima facie' showing." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) (internal citation omitted).

Bailey contends that his eventual consent to take the chemical test shows that the affidavit lacked probable cause to support a warrant for the blood draw. The assertion fails because, as stated above, a judge did not need to determine that Bailey was reluctant to take the chemical test or had tried to delay taking the chemical test in order to conclude that the affidavit established probable cause to draw his blood for alcohol testing. Bailey further asserts that Lorenz's actions after Bailey agreed to take the chemical test demonstrate that Lorenz was not actually worried that Bailey was trying to delay taking the chemical test. However, an officer's "actual motives are irrelevant" when "the circumstances, viewed objectively, support a finding of probable cause." *Criss*, 867 F.2d at 262.

Finally, Bailey claims that even if there was probable cause to draw Bailey's blood for alcohol testing, the blood draw violated Bailey's constitutional rights because it makes "no legal or logical sense" for a judge to sign a warrant for a blood draw after Bailey had voluntarily agreed to a chemical test. Appellant Br. at 36. This assertion fails because Bailey cites no authority to establish that his agreement to take a chemical test prohibited Lorenz from obtaining a warrant to test his blood for alcohol.

C.

Bailey's claim for malicious prosecution of a crime also fails as a matter of law. "To succeed on a malicious-prosecution claim under § 1983 when the claim is premised on a violation of the Fourth Amendment," a plaintiff must show, in addition to other elements, that "there was a lack of probable cause for the criminal prosecution." *Sykes*, 625 F.3d at 308. As stated above, no reasonable jury could conclude that Lorenz lacked probable cause to arrest Bailey for operating while intoxicated. Further, no significant exculpatory evidence emerged between the time of Bailey's arrest and the time of his prosecution. Rather, the fact that his blood-alcohol level tested at .07—a number that was barely under Michigan's legal limit of .08—at least forty minutes after Lorenz stopped Bailey suggests that Bailey was intoxicated at the time Lorenz arrested Bailey. Mich. Comp. Laws 257.625(1)(b). And because Lorenz observed Bailey drive the wrong way, there was also probable cause to prosecute Bailey for operating a vehicle while his "ability to operate the vehicle [was] visibly impaired" due to the "consumption of alcoholic liquor." Mich. Comp. Laws 257.625(3). Accordingly, Bailey's malicious prosecution claim fails to the extent this claim is based on Lorenz's participation in Bailey's criminal prosecution because there was probable cause to prosecute Bailey for operating while impaired.

Bailey's malicious prosecution claim also fails as a matter of law with respect to the administrative proceeding that led to Bailey's license suspension. This is because there was probable cause to seek suspension of Bailey's license. Under Michigan law, a person's license will be suspended if the person unreasonably refuses an officer's request to take a chemical test after being arrested for driving while intoxicated. Mich. Comp. Laws 257.625a(6)(b)(v); 257.625f(4)(c). There was probable cause to seek suspension of Bailey's license because the undisputed facts provided an objectively reasonable basis for believing that (1) he had refused to take the chemical test and (2) his refusal to take the test was unreasonable.

First, the undisputed evidence establishes probable cause to believe that Bailey refused the chemical test. The undisputed evidence establishes that after Lorenz asked Bailey to take a chemical test, Bailey responded "Not until I speak to my attorney." Under Michigan law, "[i]f an arrestee places conditions on his or her submission to a chemical test, then the lack of submission is treated as a refusal." *People v. Bradford*, No. 257343, 2005 WL 3536427, at *1 (Mich. Ct. App. Dec. 27, 2005) (per curiam) (citing *Collins v. Sec'y of State*, 187 N.W.2d 423, 429 (Mich. 1971)). Bailey contends that his subsequent agreement to take the chemical test establishes that he did not refuse to take the chemical test because Michigan law does not state that a person's first answer is the person's only answer. However, as the district court explained, the hearing officer's ultimate conclusion that Bailey's agreement to take the chemical test "cured" his initial refusal does not establish that a reasonable person in Lorenz's position would lack an objectively reasonable basis for thinking otherwise. *Bailey*, 2015 WL 736599, at *14. The undisputed facts therefore establish that there was probable cause to believe that Bailey had refused to take the chemical test.

Second, the undisputed facts establish probable cause to conclude that Bailey's refusal to take the chemical test was unreasonable. Bailey contends that "the undisputed facts" do not "unequivocally prove" that he was attempting to delay taking the chemical test because he agreed to take the test about 40 seconds after the test was offered to him. Appellant Br.at 44. Bailey's argument fails because he disregards the undisputed facts that Lorenz smelled intoxicants on Bailey, Bailey told Lorenz that he had recently consumed alcohol, and Bailey refused to take the preliminary breath test. In light of these facts, a reasonable person in Lorenz's position had probable cause to conclude that Bailey's agreement to take the chemical test only after he learned that it would be performed at the jail indicated that he initially refused to take the chemical test because he wanted to delay taking the test. Accordingly, the undisputed record establishes probable cause to suspend Bailey's license for unreasonably refusing to take the chemical test.

The cases that Bailey relies on do not compel a different result. For instance, *Hall v. Secretary of State*, 231 N.W.2d 396 (Mich. Ct. App. 1975), does not establish a categorical rule that a person's refusal to take a chemical test until the person has spoken to his attorney is always reasonable. Rather, in *Hall*, the court held the plaintiff's refusal to take a Breathalyzer test until the plaintiff had spoken to his attorney was reasonable in part because the police officer had denied the plaintiff the ability to speak with his attorney in order to coerce the plaintiff to cooperate. *Id.* at 399−400. That does not appear to be the case here. The district court, moreover, properly applied *People v. Bradford* to support its conclusion that *Hall* did not establish a blanket rule that refusing to take a chemical test before speaking to an attorney is always reasonable. *Bailey*, 2015 WL 736599, at *14−15.

Bailey claims that summary judgment on the administrative proceeding claim was not proper without a prior motion. However, we have held that a district court may enter summary judgment *sua sponte* if the losing party is "afforded notice and reasonable opportunity to respond to all the issues to be considered by the court." *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 931, 931 (6th Cir. 2000) (citation omitted). Similarly, Federal Rule of Civil Procedure 56(f) provides that "[a]fter giving notice and a reasonable time to respond," a district court may enter summary judgment "for a nonmovant" or grant a party's motion for summary judgment "on grounds not raised by a party." Lorenz and the City of Howell sought "dismissal of [Bailey's] Amended Complaint in its entirety on the basis that [he] failed to create a genuine issue of material fact as to all six of [the] counts" in his complaint. Bailey therefore was on notice that the issue of whether Lorenz had maliciously prosecuted Bailey by participating in the administrative proceeding was at risk of being disposed of on summary judgment. Bailey also in fact addressed this issue in his response to Lorenz's motion for summary judgment. Accordingly, the district court did not abuse its discretion in holding that that Bailey's malicious prosecution claim failed as a matter of law when premised upon Lorenz's participation in the administrative proceeding.

D.

Also proper was the district court's grant of summary judgment to Lorenz on Bailey's claim that Lorenz violated Bailey's rights under the Due Process Clause of the Fourteenth Amendment by testifying falsely at the administrative proceeding.[5] This claim fails as a matter of law because the undisputed facts show that Lorenz did not testify falsely.

---

[5]Bailey also alleged that Lorenz denied Bailey due process of law by wrongfully claiming that Bailey had refused the chemical test on a document that initiated Bailey's license suspension and by falsely swearing to a judge that Bailey had refused the chemical test. Because Bailey did not address the district court's decision that neither of

Bailey contends that Lorenz's testimony that Bailey "refused both" the preliminary breath test and the chemical test was false because Bailey did not refuse to take the chemical test. However, Bailey in fact, as stated above, initially refused to take the chemical test. Bailey also contends that Lorenz testified falsely when, in response to the hearing officer's question about whether there was an "indication that [Bailey] was unclear or unsure as to why he needed to take a second test," Lorenz stated "when I completed reading [Bailey] his chemical test rights, his only response was to my question on will he take a breath test was not 'til I speak to an attorney." However, as the district court explained, Lorenz's testimony that Bailey's "only" response was to refuse to take the chemical test until he spoke with his attorney was not false:

> Although following his statement, "Not until I speak to my attorney," Bailey expressed not knowing *where* the test would be taken, he did not "indicat[e] that he was unclear or unsure as to why he needed to take a second test," which is what the hearing officer asked. Additionally, after reading the chemical test rights from the form, Lorenz asked Bailey only one question, "Will you take a breath test?" and Bailey specifically responded "Not until I speak to my attorney." It was then Bailey who, 20 seconds later, restarted dialogue with Lorenz and it was Bailey who asked Lorenz a question about where the test would be administered.

*Bailey*, 2015 WL 736599, at *16 (emphasis in original). The district court therefore correctly concluded that, "at most, a reasonable jury could find that Lorenz's testimony was incomplete" because Lorenz did not testify about his discussion with Bailey after his initial refusal to take the chemical test. *Id*. As the district court explained, Lorenz's incomplete testimony did not deprive Bailey of his right to basic procedural fairness under the Due Process Clause because he had the opportunity at the administrative proceeding to cross-examine Lorenz about the additional discussions between Lorenz and Bailey and to provide his own testimony about these discussions. *Id*.

---

these allegations supported Bailey's due process claim, he waived his challenge to the district court's decision that these allegations failed as a matter of law. *Bailey*, 2015 WL 736599, at *18.

Lorenz's failure to move for summary judgment on Bailey's false testimony claim did not preclude the district court from entering summary judgment. As stated above, "[a]fter giving notice and a reasonable time to respond" a district court can grant a party's motion for summary judgment "on grounds not raised by a party." Fed. R. Civ. P. 56(f)(2). Bailey was on notice that he was required to demonstrate a genuine issue of material fact about whether Lorenz had testified falsely in order to defeat summary judgment on this claim because Lorenz moved for summary judgment on Bailey's due process claim and because Bailey's complaint alleged that Lorenz had violated Bailey's Fourteenth Amendment rights by testifying falsely. Bailey also had a reasonable time to respond because the district court questioned Bailey's attorney at the summary judgment hearing about whether Lorenz had testified falsely. The district court therefore did not abuse its discretion in granting summary judgment on the ground that Lorenz had not testified falsely.

In addition, the district court did not commit reversible error by asking Bailey to submit the entire administrative transcript after Lorenz's motion for summary judgment was fully briefed. Bailey cites no case or statute that establishes that a district court commits reversible error by asking a non-movant to supplement the record with a complete transcript of a hearing on which the non-movant relied to defeat summary judgment. Further, even if the district court erred when it ordered Bailey to provide the complete transcript, this error does not justify reversal because we need not rely on the entire transcript in order to conclude that Bailey's due process claim fails as a matter of law. The partial transcript that Bailey provided in support of his motion for summary judgment describes the allegedly false portions of Lorenz's testimony and establishes that Bailey had the opportunity to cross-examine Lorenz and to provide Bailey's

own testimony about his discussions with Lorenz. For the reasons stated above, the partial transcript is therefore sufficient to establish Bailey's due process claim fails as a matter of law. [6]

E.

The district court also properly granted summary judgment on Bailey's claim that Lorenz seized Bailey's license in violation of the Fourth Amendment. Undisputed facts establish that Lorenz had probable cause to seize Bailey's license. Bailey claims that the seizure of his license was unreasonable because Lorenz knew that Bailey was confused about what test Lorenz was offering to him and because Bailey agreed to take the chemical test once Lorenz clarified what test he was offering. However, under Michigan law, Lorenz was required to "immediately confiscate" Bailey's license after he refused to take a chemical test. Mich. Comp. Laws 257.625g(1)(a). For the reasons stated above, Bailey's initial refusal provided Lorenz with probable cause to believe that Bailey had violated Michigan law by unreasonably refusing to take a chemical test. Accordingly, summary judgment on Bailey's claim that the seizure of his license violated the Fourth Amendment was proper because the undisputed facts established that Lorenz had probable cause to seize Bailey's license.

The district court did not abuse its discretion in granting summary judgment on this claim *sua sponte*. Although Lorenz did not move for summary judgment on this claim and the district court discussed it only briefly at the summary judgment hearing, Lorenz and the City of Howell sought dismissal of Bailey's entire complaint and contended that the seizure of Bailey's blood was proper in part because he had refused to take a chemical test; such refusal would also resolve the issue whether the seizure of Bailey's license was proper. Bailey therefore was on notice that this claim was at risk of being disposed of on summary judgment and had a reasonable

---

[6]Because the undisputed facts show that Lorenz did not testify falsely, we do not reach the issue of whether Lorenz was absolutely immune from suit based on his testimony.

opportunity to respond to Lorenz's argument that Bailey had refused to take the chemical test before the district court resolved this issue in Lorenz's favor.

F.

The district court also properly denied Bailey's request for an injunction directing the City of Howell to move or remove the island median or post signage along the stretch of highway around the Shark Club's exit. Bailey lacks standing to bring this claim because he has not shown that he "has sustained or is immediately in danger of sustaining some direct injury as a result of the challenged official conduct and [that] the injury or threat of injury [is] both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyon*, 461 U.S. 95, 101−02 (1983) (internal citations omitted). Bailey offers no evidence that the lack of signage is likely to cause him to turn the wrong way out of the Shark Club's parking lot. As the district court noted, "Bailey, now as familiar with the highway running past the Shark Club[] as any other, is highly unlikely to be again injured or misled by the median or lack of signage." *Bailey*, 2015 WL 736599, at *19.

The judgment of the district court is affirmed.

**HELENE N. WHITE, Circuit Judge, concurring.** I concur in the majority opinion except with respect to the conclusions that there was probable cause, as a matter of law, to seize and to seek suspension of Bailey's license. It is not clear to me that a reasonable officer in Lorenz's position had probable cause to conclude that Bailey's request to speak to his attorney and agreement to take the chemical test only after learning that it would be performed at the jail were for the purpose of delay. Nevertheless, I concur in the affirmance as to these claims because the law in Michigan on these issues was sufficiently unclear that a reasonable officer in Lorenz's position would not have known that his actions were unlawful.